**Aimee G. METIVIER, Plaintiff,**

v.

**Jo Anne B. BARNHART, Commissioner of Social Security, Defendant.**

**No. 01–4093–JAR.**

United States District Court, D. Kansas.

Sept. 17, 2003.

---

**52.** *Gatson v. Bowen,* 838 F.2d 442, 450 (10th Cir.1988); *Biri v. Apfel,* 4 F.Supp.2d 1276, 1279–80 (D.Kan.1998).

Steven M. Tilton, Tilton & Tilton LLP, Topeka, KS, for Plaintiff.

Tanya S. Wilson, Office of United States Attorney, Topeka, KS, for Defendant.

### MEMORANDUM & ORDER

ROBINSON, District Judge.

Plaintiff Aimee G. Metivier brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the

decision of defendant, the Commissioner of Social Security, to deny her applications for a period of disability and disability insurance benefits under Title II of the Social Security Act and for supplemental security income under Title XVI of the Social Security Act. According to plaintiff, defendant erred in multiple respects. Specifically, plaintiff contends that the ALJ failed to accord adequate weight to the opinion of a social worker with whom plaintiff visited on occasion over a three-month period; erroneously concluded that plaintiff could perform other jobs in the national economy; improperly discredited plaintiff's testimony; and submitted a Psychiatric Review Technique form that was not supported by competent evidence. As explained in more detail below, the court rejects each of plaintiff's arguments and affirms defendant's decision.

## I. Procedural Background

On August 14, 1997 and December 3, 1997, plaintiff filed her applications for a period of disability and disability insurance benefits and for supplemental security income, respectively. In her applications, plaintiff alleged that she was disabled since November 6, 1987 due to diabetic migraines, mild epilepsy, kidney infections, depression and allergies. Her applications were denied both initially and upon reconsideration. At plaintiff's request, an administrative law judge ("ALJ") held a hearing on January 6, 1999, at which both plaintiff and her counsel were present. During the hearing, plaintiff's counsel stated that plaintiff's impairments included "brittle diabetes, chronic urinary tract infections, chronic depression, anxiety problems, a history of migraines, two strokes, cardiac arrhythmia, and cardiac problems, and arteriosclerotic heart disease for which she has been treated, epilepsy, where she's had a history of seizure activity, tremors, essential tremors, as well as gastroesophageal reflux problem."

On April 5, 1999, the ALJ rendered a decision in which he determined that plaintiff was not under a "disability" as defined by the Social Security Act at any time prior to the date her insured status expired (*i.e.*, September 30, 1988) and, thus, was not eligible to receive disability insurance benefits. The ALJ also concluded that plaintiff was not under a "disability" at any time through the date of his decision and, thus, was not eligible for supplemental security income payments. After the ALJ's unfavorable decision, plaintiff requested review by the Appeals Council. The Appeals Council denied plaintiff's request for review on June 7, 2001, rendering the ALJ's decision the final decision of defendant.

## II. Standard of Review

Judicial review under 42 U.S.C. § 405(g) [1] is limited to whether defendant's decision is supported by substantial evidence in the record as a whole and whether defendant applied the correct legal standards.[2] The Tenth Circuit has defined "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." [3] In the course of its review, the court may

---

1. To the extent plaintiff's complaint is brought pursuant to 42 U.S.C. § 1383(c)(3), the relevant standard of review is the same. Section 1383(c)(3) provides that the "final determination of the Commissioner of Social Security ... shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title."

2. See *White v. Massanari*, 271 F.3d 1256, 1257 (10th Cir.2001) (citing *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1029 (10th Cir.1994)).

3. *Id.* (quoting *Castellano*, 26 F.3d at 1028).

not reweigh the evidence or substitute its judgment for that of defendant.[4]

### III. Relevant Framework for Analyzing Claim of Disability and the ALJ's Findings

"Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . ."[5] The Social Security Act further provides that an individual "shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ."[6]

█ The Social Security Administration has established a five-step sequential evaluation process for determining whether a claimant is disabled,[7] and the ALJ in this case followed the five-step process. If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary.[8] Step one determines whether the claimant is presently engaged in substantial gainful activity.[9] If she is, disability benefits are denied.[10] If she is not, the

decision maker must proceed to the second step.[11] Here, the ALJ determined that plaintiff was not engaged in substantial gainful activity and, thus, properly proceeded to the second step.

The second step of the evaluation process involves a determination of whether "the claimant has a medically severe impairment or combination of impairments."[12] This determination is governed by certain "severity regulations," is based on medical factors alone, and, consequently, does not include consideration of such vocational factors as age, education, and work experience.[13] Pursuant to the severity regulations, the claimant must make a threshold showing that her medically determinable impairment or combination of impairments significantly limits her ability to do basic work activities.[14] If the claimant is unable to show that her impairments would have more than a minimal effect on her ability to do basic work activities, she is not eligible for disability benefits.[15] If, on the other hand, the claimant presents medical evidence and makes the de minimis showing of medical severity, the decision maker proceeds to step three.[16] The ALJ in this case concluded that the combination of plaintiff's impairments, including insulin-dependent diabetes mellitus, affective disorder, allergicrhinitis/sinusitis, occasional complicated headaches/migraine head-

---

4. *Id.*

5. *Williams v. Bowen,* 844 F.2d 748, 750 (10th Cir.1988) (quoting 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (1982)).

6. *Id.* (quoting 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B) (1982 & Supp. III 1985)).

7. *See id.* (citing 20 C.F.R. §§ 404.1520, 416.920 (1986)).

8. *Id.*

9. *Id.*

10. *Id.*

11. *Id.*

12. *Id.* (quoting *Bowen v. Yuckert,* 482 U.S. 137, 107 S.Ct. 2287, 2291, 96 L.Ed.2d 119 (1987)).

13. *Id.* (citing 20 C.F.R. §§ 404.1520(c), 416.920(c) (1986)).

14. *Id.* at 750–51 (citing 20 C.F.R. §§ 404.1521(b), 416.921(b) (1986)).

15. *Id.* at 751.

16. *Id.*

aches, recurrent urinary tract infections, cardiac arrhythmia, occasional slight essential tremor of the upper extremities, and a history of seizure disorder, satisfied the severity requirement and, thus, the ALJ proceeded to step three.

In step three, the ALJ "determines whether the impairment is equivalent to one of a number of listed impairments that the Secretary acknowledges are so severe as to preclude substantial gainful activity."[17] If the impairment is listed and thus conclusively presumed to be disabling, the claimant is entitled to benefits.[18] If not, the evaluation proceeds to the fourth step, where the claimant must show that the "impairment prevents [the claimant] from performing work he has performed in the past."[19] If the claimant is able to perform her previous work, she is not disabled.[20] With respect to the third step of the process in this case, the ALJ determined that plaintiff's impairments were not listed or medically equivalent to those listed in the relevant regulations.

At the fourth step, the ALJ concluded that plaintiff retains the residual functional capacity (RFC) to perform the job duties of her previous job as a child care provider and, thus, concluded that she was able to return to work as a child care provider. For the sake of argument and as an alternative to his conclusion that plaintiff was able to perform her previous work as a

child care provider, the ALJ proceeded to the fifth and final step of the sequential evaluation process-determining whether the claimant has the RFC "to perform other work in the national economy in view of [her] age, education, and work experience."[21] At that point, the ALJ, after concluding that plaintiff had no significant nonexertional limitations, relied conclusively on the medical vocational guidelines ("the grids") in determining that plaintiff was not disabled. Specifically, the ALJ concluded, based on the grids, that plaintiff was capable of performing the full range of medium work and that a significant number of jobs existed in the state and national economies which plaintiff would be able to perform.

## IV. Analysis of Plaintiff's Specific Arguments

In her motion, plaintiff contends that the ALJ made several errors in reaching his decision-defendant failed to accord adequate weight to the opinion of a social worker with whom plaintiff visited on occasion over the course of three months, erroneously concluded that plaintiff could perform other jobs in the national economy, improperly discredited plaintiff's testimony at the hearing, and completed a Psychiatric Review Technique form that was not supported by competent evidence. The court addresses each of these arguments in turn.[22]

**17.** *Id.* (citing 20 C.F.R. §§ 404.1520(d), 416.920(d) (1986); *Bowen v. Yuckert,* 107 S.Ct. at 2291).

**18.** *Id.*

**19.** *Id.* (citing 20 C.F.R. §§ 404.1520(e), 416.920(e) (1986); *Bowen v. Yuckert,* 107 S.Ct. at 2291).

**20.** *Id.*

**21.** *See id.* (quoting *Bowen v. Yuckert,* 107 S.Ct. at 2291).

**22.** Plaintiff also contends in her papers that the ALJ erred in concluding, at step four of the sequential evaluation process, that plaintiff could return to her previous work as a child care provider. The court declines to address this argument in light of its conclusion that substantial evidence supports the ALJ's conclusion at step five of the sequential evaluation process that, regardless of whether plaintiff could return to her previous work, she could perform other jobs in the national economy.

## A. Disregarding Ms. Williams' Opinion

■ In his decision, the ALJ expressly disregarded the opinion of Margaret Williams, LMHC-a social worker who visited with plaintiff on occasion between October 1998 and December 1998. Ms. Williams' opinion was in the form of Mental Residual Functional Capacity Assessment completed by Ms. Williams on plaintiff's behalf. In the mental RFC assessment, Ms. Williams ultimately concluded that plaintiff is "incapable of retaining any information that would be required to maintain functionality in a work setting." She further noted that plaintiff was "markedly limited" in several areas related to understanding, memory and concentration, including the ability to understand, remember and carry out very short and simple work instructions and the ability to maintain attention and concentration for extended periods. The ALJ disregarded Ms. Williams' mental RFC assessment for several reasons. Specifically, the ALJ explained that the assessment was inconsistent with Ms. Williams' own notes and inconsistent with the remaining evidence in the record concerning plaintiff's mental condition.

In her brief, plaintiff directs the court to various Tenth Circuit law concerning the "great weight" and "controlling weight" to which the opinion of a treating physician is entitled, presumably suggesting that Ms. Williams is one of plaintiff's treating physicians. Plaintiff also identifies the various factors a court must consider in determining what weight to give the "medical opinion" of a treating physician. Ms. Williams, however, is not a treating physician. She is a social worker. As a social worker, Ms. Williams, as the ALJ correctly noted, is not an "acceptable medical source" and her opinion is not entitled to any special weight whatsoever.[23] Moreover, while Ms. Williams arguably might be considered an "other source" pursuant to 20 C.F.R. § 1513(d), the "other sources" provision simply "allows non-acceptable medical sources to opine as to the 'severity' of the diagnosed disability, once established by 'acceptable medical sources.' "[24] In other words, Ms. Williams' opinion cannot be the only evidence showing disability, as it is here.[25]

■ While plaintiff concedes in her papers that Ms. Williams, as a social worker, is not an acceptable medical source, she nonetheless suggests that Ms. Williams' opinion should be considered "as part of the opinion of an acceptable medical source" because Ms. Williams was allegedly working closely with plaintiff's treating physician, Dr. Howell. Plaintiff, however, directs the court to no evidence remotely suggesting a close working relationship between Ms. Williams and Dr. Howell. Indeed, plaintiff directs the court to only one notation in Ms. Williams' notes in which she states that she will call Dr. Howell about increasing plaintiff's prescription for anti-depressant medication. In the absence of any evidence that Dr. Howell supervised Ms. Williams' treatment of plaintiff in any respect, the court rejects plaintiff's argument that Ms. Williams'

23. *See* 20 C.F.R. § 1513(a); *Barnett v. Apfel,* 231 F.3d 687, 690 (10th Cir.2000) (opinions from "other sources" not entitled to same significant weight as opinions from acceptable medical sources).

24. *Giese v. Barnhart,* 2002 WL 31856116, at *1 (9th Cir. Dec.19, 2002) (citing 20 C.F.R. § 404.1513(d)).

25. *See McKinney v. Barnhart,* 2003 WL 1788555, at *2 (10th Cir. Apr.4, 2003) (non-acceptable medical sources cannot be the only evidence showing disability).

opinion should be entitled to some weight because it was somehow endorsed by Dr. Howell.[26]

Perhaps understanding that the opinion of Ms. Williams, as an "other source" at best, cannot be the only evidence of disability, plaintiff urges that her opinion is supported by "an abundance of evidence from plaintiff's treating physicians." Plaintiff, however, does not identify this evidence for the court and the court, after reviewing the record, cannot find any treating physician who, like Ms. Williams, concluded that plaintiff, due to her mental condition, would be unable to work. Finally, it is significant that the ALJ discounted Ms. Williams' mental RFC assessment in part because the assessment was inconsistent with Ms. Williams' own notes. Plaintiff does not dispute this finding and it is an appropriate basis on which to discount the assessment.[27] The court has carefully considered plaintiff's remaining arguments concerning the opinion of Ms. Williams and rejects those arguments. For the reasons stated above, the ALJ properly discounted Ms. Williams' mental RFC assessment.

### B. Ability to Perform Other Jobs in the National Economy

Plaintiff maintains that the ALJ erred in concluding that plaintiff could perform other jobs in the national economy. Specifically, plaintiff contends that the ALJ, in formulating plaintiff's RFC, failed to take into account plaintiff's depression, her severe migraine headaches, and her need to elevate her feet due to brittle diabetes. Plaintiff further contends that the ALJ inappropriately relied conclusively on the medical vocational guidelines ("the grids") in determining that plaintiff was not disabled without obtaining vocational testimony. As explained below, the court rejects these arguments.

According to plaintiff, the ALJ erred in failing to consider plaintiff's depression, her migraine headaches and her need to elevate her feet due to brittle diabetes. With respect to her depression, plaintiff asserts that her depression was severe enough to cause functional limitations. The ALJ did not factor plaintiff's depression into his RFC assessment because he concluded that plaintiff's mental condition was "stable" and under good control with medication and episodic counseling. The ALJ also found it significant that none of the psychological experts in the case placed any limitations or restrictions on plaintiff's abilities. In fact, the experts agreed that plaintiff had no more than slight mental impairment. While plaintiff points to evidence in the record demonstrating that plaintiff does suffer from depression, the mere fact that plaintiff has depression or has been diagnosed with "major depression" simply does not mandate the conclusion that plaintiff cannot work.[28]

With respect to her migraine headaches, plaintiff complains that the ALJ made no findings regarding the effects of

---

26. *See, e.g., Giese*, 2002 WL 31856116, at *1 (rejecting claimant's contention that since social worker worked under the supervision of a licensed psychiatrist, her status should be elevated to that of her supervisor where supervisor never treated plaintiff or signed off on social worker's findings); *Gomez v. Chater*, 74 F.3d 967, 970–971 (9th Cir.1996) (non-medical source must be integral to team, and the acceptable medical source must undersign her findings).

27. *See Cathey v. Barnhart*, 2003 WL 1522278, at *2 (10th Cir. Mar.25, 2003) (ALJ properly disregarded opinion of nurse practitioner where opinion contradicted nurse's office notes).

28. *See Bernal v. Bowen*, 851 F.2d 297, 301 (10th Cir.1988) ("The mere fact that [claimant] was diagnosed as suffering from major depression does not automatically mean that he is disabled.").

these headaches on her overall condition. A review of the ALJ's decision, however, clearly reveals that the ALJ did not incorporate plaintiff's migraines into the RFC assessment because he expressly determined that her migraine headaches were under good control with medication and did not interfere with her ability to work. None of the examining or treating physicians in this case placed any restrictions or limitations on plaintiff's activities due to her migraines. Moreover, the vast majority of the evidence plaintiff points to concerning her migraine headaches addresses plaintiff's "complex" migraine headaches-headaches that plaintiff admits she suffered only once or twice each year. In short, substantial evidence supports the ALJ's conclusion that plaintiff's migraine headaches did not interfere with her ability to work.

 With respect to her purported need to elevate her feet, plaintiff testified at the hearing that she could walk for 30 minutes and stand for only 10 to 15 minutes before she would need to sit down and elevate her feet for 30 minutes to 45 minutes due to swelling. While it is true that the ALJ's RFC assessment did not take into consideration plaintiff's need to elevate her feet, substantial evidence supports the omission. Significantly, there is no medical evidence in the record suggesting that plaintiff needs to elevate her feet at all, let alone on a daily basis as plaintiff testified. Indeed, the only evidence in the record concerning plaintiff's need to elevate her feet is plaintiff's own testimony-testimony that the ALJ appropriately rejected as inconsistent with the objective medical evidence in the

record and inconsistent with plaintiff's own description of her daily activities.[29]

 The court turns, then, to plaintiff's argument concerning the ALJ's reliance on the grids to determine that plaintiff was not disabled. An ALJ may not rely conclusively on the grids unless he finds (1) that the claimant has no significant nonexertional impairment, (2) that the claimant can do the full range of work at some RFC level on a daily basis, and (3) that the claimant can perform most of the jobs in that RFC level.[30] In applying the grids to this case, the ALJ specifically concluded that the "claimant has no significant non-exertional limitations which narrow the range of work she can perform." Plaintiff contends that no "credible substantial evidence" exists in the record to support the ALJ's conclusion and that the ALJ should not have applied the grids in making his determination that she could work, because she has nonexertional impairments of depression, anxiety, poor concentration, poor memory and pain.

Plaintiff points to evidence in the record supporting her claim of severe nonexertional impairments. However, all of the evidence to which plaintiff directs the court comes from the mental RFC assessment completed by Ms. Williams-evidence that the ALJ, as explained above, appropriately rejected. Plaintiff also urges that the ALJ "should have accepted" plaintiff's testimony that she had difficulties with memory, concentration, following instructions and basic daily activities. The ALJ, however, is not bound to simply accept a claimant's testimony-particularly when

---

29. *See White v. Massanari,* 271 F.3d 1256, 1261–62 (10th Cir.2001)(ALJ adequately supported his negative credibility determination regarding claimant where he found the claimant's testimony inconsistent with her own account of her daily activities); *Barnett v. Apfel,* 231 F.3d 687, 690 (10th Cir.2000) (ALJ relied on appropriate factors and committed no er-

ror with respect to his assessment of plaintiff's subjective complaints of pain where ALJ, *inter alia,* noted the paucity of objective medical findings in the record).

30. *Thompson v. Sullivan,* 987 F.2d 1482, 1488 (10th Cir.1993).

that ALJ, as here, has determined that the claimant's testimony is inconsistent with the objective medical evidence in the record.

■ Moreover, the court finds that the ALJ properly relied on the grids in this case. While nonexertional limitations may preclude use of the grids, the grids can be used if the impact of those impairments does not significantly reduce the underlying job base.[31] The ALJ determined that plaintiff met these parameters. A review of the record shows that plaintiff's alleged nonexertional limitations do not preclude her working in a broad range of jobs. Each of the psychological experts in this case found that plaintiff suffered no more than slight mental impairment. Moreover, as the ALJ recognized, the record clearly reflects that plaintiff's mental status, particularly her history of depression, is under good control with medication and episodic counseling.[32] In short, plaintiff has failed to show that her alleged nonexertional impairments necessarily interfere with her ability to work, and thus the ALJ properly relied on the grids.[33]

## C. Assessment of Plaintiff's Credibility

■ Plaintiff asserts that the ALJ committed error by improperly discrediting plaintiff's testimony concerning her several impairments and the purported effects of those impairments on her life. Specifically, plaintiff contends that the ALJ, in discrediting plaintiff's testimony, failed to apply the "proper evaluation sequence adopted by the Tenth Circuit" in

*Luna v. Bowen,* 834 F.2d 161 (10th Cir. 1987). Under *Luna,* the ALJ must first decide whether the claimant has demonstrated a pain-producing impairment and then must decide whether the claimant has demonstrated that the impairment is one that could reasonably produce the pain alleged. Finally, the ALJ must assess the credibility of subjective claims of pain greater than that usually associated with the particular impairment. A significant portion of plaintiff's argument concerning the ALJ's assessment of plaintiff's testimony is dedicated to explaining how plaintiff has satisfied the first two prongs of *Luna*—demonstrating a pain-producing impairment and demonstrating that the impairment is one that could reasonably produce the pain alleged. It is clear from a review of the ALJ's decision, however, that he concluded that plaintiff had satisfied these prongs. For example, the ALJ states in his written decision that "the evidence does show that the claimant has had medically determinable impairments which could reasonable be expected to produce symptoms." The ALJ, however, goes on to state that the "record does not demonstrate, by objective medical evidence, an impairment capable of causing the degree . . . of pain that the claimant alleges." He then discusses the credibility of plaintiff's allegations of pain greater than that usually associated with the particular impairments. Thus, the court need not address plaintiff's arguments concerning the first two prongs of *Luna.*

---

**31.** *See Evans v. Chater,* 55 F.3d 530, 532 (10th Cir.1995) (noting that an ability to perform a "substantial majority" of the work in the designated residual-functional-capacity category justifies use of the grids).

**32.** *See Cathey v. Barnhart,* 2003 WL 1522278, at *2 (10th Cir. Mar.25, 2003) (ALJ properly applied grids in determining that plaintiff could work despite plaintiff's depression;

plaintiff took prescribed anti-depressant medication and was treating depression successfully) (citing *Bernal v. Bowen,* 851 F.2d 297, 301 (10th Cir.1988) ("The mere fact that [claimant] was diagnosed as suffering from major depression does not automatically mean that he is disabled.")).

**33.** *Id.*

In determining whether a claimant's subjective claims of pain are credible, the ALJ considers, in addition to medical test results, such factors as a claimant's persistent attempts to find relief for her pain and her willingness to try any treatment prescribed, regular use of crutches or a cane, regular contact with a doctor, the claimant's daily activities, and the dosage, effectiveness, and side effects of medication.[34] Moreover, the ALJ must give specific reasons why he or she rejects a claimant's subjective complaints of pain.[35] Ultimately, credibility determinations "are peculiarly the province of the finder of fact," and should not be upset if supported by substantial evidence.[36]

A review of the ALJ's decision in this case reveals that he complied with *Luna* in assessing plaintiff's credibility. In that regard, the ALJ concluded that plaintiff's allegations concerning her symptoms and her functional limitations were "not fully credible to the extent that she alleges an inability to perform work activity at all levels of physical exertion." The ALJ's assessment was based on "several specific factors, including plaintiff's medical history, the degree of medical treatment required, the findings made on examination, the reports of the treating and examining practitioners, and the claimant's own description of her daily activities." With respect to her daily activities, plaintiff testified that she was able to cook, shop for groceries for her family, and take care of her home, herself and her children (ages 16 and 5), including driving them to and from school. While it is true, as plaintiff points out, that she visited with doctors fairly frequently to find relief for her various ailments, those attempts were largely successful. Because many of plaintiff's impairments were successfully treated or controlled with medication, the ALJ determined that these impairments did not cause significant functional limitations. In addition, the ALJ found it significant that none of plaintiff's treating or examining physicians noted any significant functional limitations.

In short, the ALJ set forth the specific evidence he relied upon, applied the correct legal standards in evaluating plaintiff's subjective allegations of pain, and his determination on this matter is supported by substantial evidence in the record.

## D. Completion of Psychiatric Review Technique Form

When faced with a claim for disability based on a claimant's mental condition, the ALJ must complete a Psychiatric Review Technique (PRT) form and the conclusions on it must be supported by competent evidence.[37] Moreover, if the ALJ completes the form without the assistance of a medical professional (as the ALJ did here), then the ALJ is required to "discuss in his opinion the evidence he considered in reaching the conclusions expressed on the form."[38] According to plaintiff, the PRT form completed by the ALJ in this case is not supported by competent evidence. Specifically, plaintiff argues that her anxiety is much more severe than noted by the ALJ and that her func-

---

**34.** *Barnett v. Apfel,* 231 F.3d 687, 690 (10th Cir.2000) (citing *Luna,* 834 F.2d at 165–66).

**35.** *White v. Massanari,* 271 F.3d 1256, 1261 (10th Cir.2001) (citing *Kepler v. Chater,* 68 F.3d 387, 390–91 (10th Cir.1995)).

**36.** *Id.* (citing *Kepler,* 68 F.3d at 390–91).

**37.** *Miller v. Barnhart,* 2002 WL 1608452, at *3 (10th Cir. July 22, 2002) (citing *Washington v. Shalala,* 37 F.3d 1437, 1442 (10th Cir. 1994)).

**38.** *Cruse v. United States Department of Health & Human Services,* 49 F.3d 614, 617–18 (10th Cir.1995) (quoting *Washington,* 37 F.3d at 1442).

tional limitations are more restricted than noted by the ALJ.

■ With respect to plaintiff's purported anxiety, the ALJ recorded on the form that plaintiff did not suffer from any "anxiety related disorders." Plaintiff contends that this conclusion is in error because it ignores plaintiff's own statements that she suffers from anxiety, including statements she made to the claims examiner at the Florida Office of Disability Determinations to the effect that she "worries a lot at night about finances, health, bills, 2 sons are ill, her husband was shot at Saudi" and her statements on various disability forms that, when faced with deadlines or schedules, she "panics, gets shaky" and tremors start in her hands. Plaintiff also highlights a conclusory statement made on plaintiff's Reconsideration Disability Report that plaintiff "gets nervous very easily." As an initial matter, these statements are simply subjective complaints made by plaintiff and the ALJ, in large part, rejected this type of evidence after concluding that plaintiff's testimony on similar subjects was not credible. In any event, even assuming the truth of the three statements, plaintiff has not shown how the statements would support the conclusion that plaintiff suffers from an "anxiety-related disorder." Moreover, the ALJ's conclusion that plaintiff does not suffer from an anxiety-related disorder is supported by substantial evidence in the record, including plaintiff's own statements to Gerald Hodan, Ph.D., a licensed psychologist, in January 1998 that she had only occasional feelings of anxiety and that she felt emotionally stable.

■ Plaintiff also asserts that her functional limitations are more restricted than the ALJ concluded on the PRT form. In that regard, the ALJ noted that plaintiff had only "slight" restrictions in her activities of daily living; "slight" restrictions in maintaining social functioning;

"seldom" suffered from deficiencies in concentration, persistence or pace; and "never" had episodes of deterioration or decompensation in work or work-like settings which caused her to withdraw from that situation or caused her to experience exacerbation of signs or symptoms. According to plaintiff, the record supports more restrictive functional limitations. The court disagrees and concludes that competent evidence supports the ALJ's conclusions on the PRT form. As noted above, plaintiff, in January 1998, reported to Gerald Hodan, Ph.D. that she felt emotionally stable. She further reported to Dr. Hodan that her depression was under good control with Paxil. In Dr. Hodan's opinion, plaintiff's mental status was stable with past problems in remission. He opined that plaintiff had no severe impairments in attention, concentration or memory functions needed to understand, remember and follow through on job instructions.

Plaintiff was treated by Dr. Normal Howell between March 1998 and September 1998 for diabetes, headaches and depression, as well as temporary conditions such as bronchitis. Dr. Howell did not indicate in his treatment notes any limitations or restrictions on plaintiff's daily activities or functions due to any mental condition. Moreover, two psychological consultants reviewed the medical evidence in the record and neither one determined that plaintiff had any significant mental impairment or that her mental symptoms imposed any more than slight limitations upon her. To the extent plaintiff testified at the hearing to more severe limitations due to her mental condition, the ALJ found that testimony incredible in light of the objective medical evidence in the record and plaintiff's own description of her daily activities. This credibility determination, as explained above, is supported by substantial evidence.

In her papers, plaintiff asserts that there is additional evidence in the record that supports more restrictive functional limitations on plaintiff. Plaintiff emphasizes, for example, that the November 25, 1997 notes of an interviewer in a Social Security Office indicate that "claimant many times gives evidence of not understanding." No context or explanation is provided for this notation, however; thus, the ALJ can hardly be faulted for failing to attach significance to the statement.[39] Plaintiff further highlights that a claims examiner indicated on December 23, 1997 that plaintiff complained of various mental limitations, including poor concentration during tasks such as cooking and paying bills. In other words, the claims examiner was simply reciting plaintiff's own statements as to her limitations. These statements, then, are simply evidence of subjective complaints by plaintiff similar to those complaints that the ALJ already concluded lacked credibility.

In short, the PRT form completed by the ALJ is supported by competent evidence and plaintiff's arguments to the contrary are rejected.

**IT IS THEREFORE ORDERED BY THE COURT THAT** plaintiff's motion for judgment (doc. # 11) is **denied** and defendant's decision denying plaintiff disability benefits is affirmed.

**IT IS SO ORDERED.**

---

**39.** *See Ragland v. Shalala,* 992 F.2d 1056, 1059 (10th Cir.1993) (isolated, conclusory statement of claims representative should not have played a role in the analysis of the case without some further development of the pertinent facts).