**F I L E D**

**UNITED STATES COURT OF APPEALS**

**December 13, 2005**

**FOR THE TENTH CIRCUIT**

ELLIE E. SHUBARGO,

      Plaintiff-Appellant,

  v.

JO ANNE B. BARNHART,
Commissioner, Social Security
Administration,

      Defendant-Appellee.

No. 05-7003
(D.C. No. CIV-04-08-W)
(E.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **HENRY, ANDERSON**, and **TYMKOVICH**, Circuit Judges.

After examining the briefs and appellate record, this panel has determined

unanimously to grant the parties' request for a decision on the briefs without oral

argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore

ordered submitted without oral argument.

Claimant Ellie E. Shubargo appeals from an order of the district court

affirming the Commissioner's denial of her claim for Social Security benefits.

---

[*]    This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

We exercise jurisdiction under 42 U.S.C. § 405(g) and 28 U.S.C. § 1291 and reverse and remand.

## I. Background

Mrs. Shubargo injured her back in April 1997 and has not worked since. In June 1998, she filed an initial application for disability benefits. After conducting a hearing, the Administrative Law Judge (ALJ) found that Mrs. Shubargo had a mild-to-moderate cervical/thoracic spinal sprain and functioned at the borderline level of intellectual functioning. He concluded, however, that she had no impairment meeting the criteria of any of the listed impairments described in Appendix 1 of the Regulations. *See* 20 C.F.R., part 404, subpart P, app. 1. The ALJ also found that objective clinical and laboratory diagnostic findings did not support Mrs. Shubargo's claims of disabling pain and that her pain did not preclude the performance of at least light work. Her request for benefits was denied in September 1999. Mrs. Shubargo did not judicially appeal from that decision, and it is binding in this appeal. *See* 20 C.F.R. § 404.955.

The appeal at bar arises out of Mrs. Shubargo's second disability application, filed in August 2001. There, she again claimed disability resulting from the same incident occurring in 1997, asserting that her condition had worsened. Her claim was denied at the initial stage and on reconsideration, and a

second hearing was held on March 26, 2003. Following that hearing, the ALJ concluded once again that Mrs. Shubargo, who was forty-five years old at that time, was not disabled. The ALJ found that Mrs. Shubargo suffers from degenerative disc disease and an anxiety-related disorder and is unable to read. But he nevertheless concluded at step four of the sequential evaluation process, *see Williams v. Bowen,* 844 F.2d 748, 750-51 (10th Cir. 1988) (discussing the five-step process set forth in 20 C.F.R. § 404.1520), that she could return to her past light work as a housekeeper. Alternatively, after consulting a vocational expert, the ALJ concluded at step five that, even if Mrs. Shubargo could not return to her past work as a housekeeper, there was other light and sedentary work existing in substantial numbers in the national economy that she could perform. The Appeals Council denied Mrs. Shubargo's request for administrative review, making the ALJ's decision the final decision of the Commissioner. *See Doyal v. Barnhart,* 331 F.3d 758, 759 (10th Cir. 2003). Mrs. Shubargo appealed the decision to the district court, which affirmed the decision of the Commissioner.

In her appeal to this court, Mrs. Shubargo asserts that the ALJ erred by (1) failing to explain why her impairments do not meet the criteria of a listed impairment; (2) failing to either properly weigh the opinion of Dr. Kinney, who Mrs. Shubargo listed as a treating physician, or to contact him to determine whether he had actually treated her; (3) failing to perform a proper credibility

analysis; and (4) ignoring a medical report prepared by a consulting physician that opines that Mrs. Shubargo can only perform sedentary work.

## II. Standard of review

"[T]he burden to prove disability in a social security case is on the claimant." *Hawkins v. Chater,* 113 F.3d 1162, 1164 (10th Cir. 1997). We review the Commissioner's decision "to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Hamlin v. Barnhart,* 365 F.3d 1208, 1214 (10th Cir. 2004) (quotation marks omitted). "[B]ecause our review is based on the record taken as a whole, we will meticulously examine the record in order to determine if the evidence supporting the agency's decision is substantial," but we "neither reweigh the evidence nor substitute our discretion for that of the Commissioner." *Id.* (quotation marks and brackets omitted). When determining whether correct legal standards were applied and evidence is substantial, we examine whether the ALJ followed the agency's specific rules. *See Frey v. Bowen,* 816 F.2d 508, 512 (10th Cir. 1987). With these standards in mind, we address each of Mrs. Shubargo's claims of error.

## III. Analysis

**1. Step three analysis.** At step three of the sequential evaluation, a claimant must establish that her impairment is so severe that it is equivalent to all

of the criteria of a specific listed impairment. *See Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). A finding that an impairment meets a listing creates a presumption of disability. *Id.* at 532. Mrs. Shubargo contends that the ALJ erred in failing to discuss why she did not meet a listed impairment. *See Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996) (holding that an ALJ is "required to discuss the evidence and explain why he found that appellant was not disabled at step three").

We conclude that *Clifton's* step three analysis is factually distinguishable. In *Clifton* the court specifically noted that the ALJ failed to "discuss the evidence or his reasons for determining that appellant was not disabled at step three." *Id.* Here, in contrast, the ALJ evaluated all of the medical evidence (including evidence from Mrs. Shubargo's first application, which was submitted for historical purposes) and explained what weight he gave to it. He obtained a medical expert's testimony that Mrs. Shubargo did not meet a spinal disorder listing. The ALJ explained why he rejected the records from Dr. Kinney's office and why he had doubts as to Mrs. Shubargo's credibility. He discussed the psychiatric review technique forms in the medical record and accepted two medical opinions stating that Mrs. Shubargo is only moderately limited in understanding and remembering detailed instructions and interacting appropriately with the general public. While our review would have been easier if the ALJ had

set forth the specific criteria in the listings that he concluded Mrs. Shubargo did not meet, we hold that the ALJ sufficiently explained why he believed that Mrs. Shubargo is not presumptively disabled.

**2. Physician assistant evidence.** Mrs. Shubargo submitted medical records from three visits she made to Dr. Kinney's office over the course of ten months. Mrs. Shubargo admits, and the medical records show, that she was treated by Dr. Kinney's physician's assistant (PA), Bill Evans each time. Aplt. Br. at 22. In the first of these records, Mrs. Shubargo complained only of difficulty in sleeping because of stress. In the second, she complained of chronic lumbar pain. No X-rays or MRIs of Mrs. Shubargo's lumbar spine are in the medical record, and the PA ordered none. But the PA noted positive straight leg raising signs in both legs, weakness in the left leg, decreased patellar reflexes, and decreased sensation in the lower left leg. He diagnosed low back pain with radiculopathy.

One month later, the PA saw Mrs. Shubargo for the purpose of filling out a residual functional capacity (RFC) form, and he prescribed Darvocet. Although he conducted no further diagnostic tests, PA Evans changed his diagnosis on the RFC form to herniated lumbar disc. PA Evans opined that Mrs. Shubargo could walk less than one block and sit and stand no more than two hours in an eight-hour workday for no more than ten minutes at a time. He stated that she would

have to shift positions at will between sitting, standing, and walking, and that she would need unscheduled breaks. She would have to elevate her left leg at times when sitting, and would have to use a cane when walking or standing. And she could occasionally lift less than ten pounds, and was limited in performing repetitive reaching, handling, or fingering.

Mrs. Shubargo asserts that the ALJ erred by failing to give this report, which she characterizes as Dr. Kinney's opinion, controlling weight. *See* 20 C.F.R. § 404.1527(d)(2); *Watkins v. Barnhart,* 350 F.3d 1297, 1300 (10th Cir. 2003) (stating that an ALJ is required to give the opinion of a treating physician controlling weight if it is both (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "consistent with other substantial evidence in the record") (quotation marks omitted).

The ALJ rejected the medical report from Dr. Kinney's office, concluding that "little or no weight can be given to the records" because the PA, and not Dr. Kinney, actually treated Mrs. Shubargo. Aplt. App. Vol. 2 at 25. The ALJ also found that the restrictions provided by PA Evans were inconsistent with the medical evidence in the record.

The medical opinions of a PA are not entitled to controlling weight under the statutes. "Sources who can provide evidence to establish an impairment" that may be entitled to controlling weight include only licensed physicians,

optometrists, and podiatrists; licensed or certified psychologists; and qualified speech-language pathologists. 20 C.F.R. § 404.1513(a). The ALJ should use a PA's medical observations to assist him in determining the severity of a claimant's impairments and how they affect her ability to work, *see* § 404.1513(d) (allowing consideration of other medical-source evidence and defining "other sources" to include physicians' assistants), but a PA's opinion does not carry the same weight as the medical opinion of a licensed physician. The ALJ was not required to give controlling weight to PA Evans' opinion.

We also reject Mrs. Shubargo's claim that the ALJ should have contacted Dr. Kinney to determine whether he treated her. The medical records, on their face, showed that PA Evans conducted all tests and prepared the RFC forms (even though Dr. Kinney also placed his signature on them two years later), and Mrs. Shubargo never asserted that Dr. Kinney actually treated her. Under these facts, the ALJ had no duty to contact Dr. Kinney. *See* 20 C.F.R. § 404.1512(e) (ALJ must recontact medical source for additional information when evidence is inadequate for the ALJ to make a determination of disability); *cf. White v. Barnhart*, 287 F.3d 903, 908-09 (10th Cir. 2001) (noting that rejection of physician's opinion does not trigger duty to recontact when record is adequate for consideration).

Finally, we conclude that the ALJ's statement that PA Evans' opinion and limitations are inconsistent with the medical record is supported by substantial evidence. Dr. Anagnost, who treated Mrs. Shubargo at the end of 1999 (before she saw PA Evans during 2001), stated that Mrs. Shubargo could walk without difficulty and had essentially "good range of motion" and only "mild evidence of cervical spondylosis." Aplt. App. Vol. 2 at 396-97. He recommended physical therapy. Dr. Grubb, who examined Mrs. Shubargo in October 2001 after PA Evans prepared his RFC, stated that the records indicated that she had only a mildly bulging disc in her cervical spine (even though Mrs. Shubargo told him that her MRI revealed disc disease in both her lumbosacral spine and cervical spine). He found that her gait was normal, and she did not appear to be in need of a cane. She had normal grip strength and dexterity, and had no tenderness or muscle spasms. Consulting physicians stated in various assessments that Mrs. Shubargo should be able to do simple, repetitive work in a low stress environment and that she is able to adapt to work situations even with her mental impairments.

**3. Credibility analysis**. Mrs. Shubargo next challenges the ALJ's assessment of her credibility, asserting that he did not properly discuss all the factors set forth in *Luna v. Bowen*, 834 F.2d 161, 165-66 (10th Cir. 1987). She claims that the ALJ used only boilerplate language that is impermissible, citing

*Hardman v. Barnhart*, 362 F.3d 676, 679-80 (10th Cir. 2004). The record belies this assertion.

The ALJ specifically noted that Mrs. Shubargo's claims of limited range of motion were not consistent with medical records that at times showed her range of motion to be "largely normal." Aplt. App. Vol. 2 at 24. The ALJ noted that her treating physician recommended only routine and conservative treatment (physical therapy) even though she claimed to have severe, unrelenting pain. *See Kepler v. Chater,* 68 F.3d 387, 390 (10th Cir. 1995) (noting that it is difficult for a claimant "[t]o establish disabling pain without the explicit confirmation of treating physicians") (quotation marks omitted). He stated that her description of her pain was so "extreme as to appear implausible," noting that she did not take medications very often or use a cane or other assistive device. Aplt. App. Vol. 2 at 24. The ALJ noted evidence indicating that one physician thought Mrs. Shubargo did not put forth maximal effort during examinations and that she told them that her MRI indicated lumbosacral disc disease, when that was not true. We generally defer to an ALJ's evaluation of credibility as long as the findings are linked to substantial evidence. *Kepler*, 68 F.3d at 391. The ALJ's findings were sufficiently linked to such evidence.

Mrs. Shubargo next argues that the ALJ "missed, ignored, or miscast evidence that reflected well upon Claimant's credibility." Aplt. Br. at 30. Our

job as a reviewing court, however, is to determine whether the ALJ's credibility determination is sufficiently detailed and supported by substantial evidence. The fact that he may have missed, ignored, or misunderstood certain evidence that might support Mrs. Shubargo's claims of disabling pain does not mandate reversal as long as, on the whole record, substantial evidence supports his credibility determination. *See Hamlin*, 365 F.3d at 1214.

Further, the evidence Mrs. Shubargo claims the ALJ missed, ignored, or misinterpreted is inconsistent or nonexistent. For example, although Mrs. Shubargo appeared to be weak at toe walking in one examination, two other examinations indicated that she could toe walk normally. The medical records Mrs. Shubargo cites to support her claim that she has asymmetrical circumferential calf and thigh measurements and atrophy that the ALJ ignored do not contain such measurements. Further, the cited records specifically state that she "has no muscle atrophy." Aplt. App. Vol. 2 at 252. The medical reports note both a normal gait and grip strength. Thus the ALJ did not ignore a finding of atrophy.

Mrs. Shubargo asserts that the ALJ misstated her testimony when he said that she claimed her pain symptoms are present "'constantly' or all of the time." *Id.* at 24. She asserts that she never "stated her pain was constant." Aplt. Br. at 34. But this assertion is also belied by the record. Mrs. Shubargo claimed to be

-11-

"in a state of constant pain" in her application for reconsideration in 1999, Aplt. App. at 108, and at the hearing she testified that, because of her pain, she lay down "most of the time . . . that's all I do," *id.* at 83. She claimed that moving caused her pain. *Id.* at 85. These statements support the ALJ's interpretation that Mrs. Shubargo complained of constant pain.

Mrs. Shubargo's claim that the ALJ omitted the alleged fact that "she had a dangerously low drop in her blood pressure during [a trigger-point] injection procedure," which would explain why there were no further attempts to perform injections, Aplt. Br. at 33, is contradicted by the record. The statement regarding Mrs. Shubargo's blood pressure is a pre-admission note about anesthesia history made before the injection procedure. *See* Aplt. App. Vol. 2 at 170. Mrs. Shubargo actually "tolerated the [trigger point] procedure well" with "no adverse reactions," *id.* at 175, 174, and chose not to have further injections because she said they did not help her, *see id.* at 244.

Finally, we reject Mrs. Shubargo's claim that the ALJ erred by ignoring a medical note limiting her activity and a vocational report from 1997. The medical note was prepared before Mrs. Shubargo underwent physical therapy and other palliative treatment and was for a limited six-day period in May 1997. And both the note and the vocational report were considered in the September 1999 adjudication in which the ALJ found that Mrs. Shubargo could still perform light

work.  The ALJ had no duty to again discuss them in the adjudication that covered the period from September 1999 through September 2001.

**4.  Step four and step five analysis.**  Three non-examining, non-treating medical experts, one who is a state DDS physician and two who are employed by the agency, prepared RFC forms or opinions for Mrs. Shubargo.  One of the agency experts, Dr. Woodcock, stated that Mrs. Shubargo could occasionally lift and/or carry ten pounds, frequently lift and/or carry less than ten pounds, stand and/or walk at least two hours in an eight-hour workday, and sit a total of about six hours in an eight-hour workday.  He based his opinion on the medical records from PA Evans and Dr. Grubb.  These exertional limitations indicate that Mrs. Shubargo has the capacity to perform only sedentary work.  *See* 20 C.F.R. § 404.1567(a).

But based on these same medical records, the DDS physician and the second agency expert stated that Mrs. Shubargo could perform light work.  The ALJ briefly mentioned the existence of Dr. Woodcock's report in his decision, but he did not discuss Dr. Woodcock's RFC findings.

The ALJ asked the second non-examining agency medical expert, Dr. Krishnamurthi, to attend the hearing, review the medical records, and testify regarding Mrs. Shubargo's RFC.  Dr. Krishnamurthi testified that, based on the medical records and the hearing testimony, Mrs. Shubargo could perform light

work, with no restrictions on pushing, pulling, or reaching. The ALJ concluded that Mrs. Shubargo can perform light work, including returning to her past light work as a housekeeper.

Citing *Clifton*, 79 F.3d at 1010 (stating that an ALJ "must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects"), and *Doyal*, 331 F.3d at 764 (noting that Social Security rulings provide that medical source opinions "must never be ignored") (quotation marks omitted), Mrs. Shubargo asserts that the ALJ erred in failing to consider and discuss Dr. Woodcock's RFC report stating that she can perform only sedentary work. She further contends that, had the ALJ accepted Dr. Woodcock's opinion that she can perform only sedentary work, given her age, lack of transferrable skills, and illiteracy, the Medical-Vocational Guidelines direct a finding of disability. *See* 20 C.F.R. pt. 404, subpt. P, app. 2 § 201.00(h)(1) (providing that "a finding of 'disabled' is warranted for individuals age 45-49 who . . . [a]re restricted to sedentary work, . . . [a]re unskilled or have no transferable skills, . . . can no longer perform past relevant work, and . . . [a]re unable to . . . read or write in English").

Under 20 C.F.R. § 416.927(f)(2)(i) and (ii), an ALJ "must consider findings of State agency medical . . . consultants . . . as opinion evidence, except for the ultimate determination about whether you are disabled," and, "[u]nless the

treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical . . . consultant . . . ." The Commissioner asserts that, because of the discrepancies in the medical opinions from state agency experts, the ALJ engaged Dr. Krishnamurthi to assist him in resolving the issue of Mrs. Shubargo's RFC capacity. But the Commissioner does not contend that the ALJ had no duty to discuss Dr. Woodcock's medical opinion, and the agency requires ALJs to weigh all medical source opinion evidence and explain in their decision why they rely on a particular non-examining agency expert's opinion when opinions are conflicting. *See* § 404.1527(f); *Hamlin*, 365 F.3d at 1223 ("If an ALJ intends to rely on a nontreating physician or examiner's opinion, he must explain the weight he is giving to it."). We conclude that this case must be remanded for the ALJ to consider and discuss Dr. Woodcock's medical opinion and to explain why he rejected it in favor of other non-examining consultative opinions. *See Clifton*, 79 F.3d at 1009-1010 (explaining that courts "should not properly engage in the task of weighing evidence in cases before the Social Security Administration" and remanding for ALJ to weigh evidence and give reasons for rejecting medical evidence).

We reject, however, Mrs. Shubargo's contention that the ALJ also erred by failing to discuss a statement by an agency clerk that Mrs. Shubargo had difficulty

understanding, concentrating, and maintaining coherency during an interview. In the note explaining the three checkmarks placed in boxes with those headings, the clerk explained that Mrs. Shubargo "stated that she was mentally retarded and did have trouble remembering dates and names." Aplt. App. Vol. 2 at 355. The ALJ listened to Mrs. Shubargo's testimony and considered the opinions of psychological and medical experts who later opined that she is able to follow simple instructions; that she is only moderately limited in the ability to work with instructions and interact appropriately with the public; and that she has only mild difficulties in the areas of concentration, persistence, and pace. An ALJ is not required to discuss every piece of evidence that he rejects; he must only discuss evidence that is "significantly probative." *Clifton*, 79 F.3d at 1010. In light of the uncontroverted opinion evidence garnered from psychologists and the clerk's explanation, the clerk's observations were not significantly probative and the ALJ was not required to discuss why he did not rely on them.

In conclusion, because the ALJ did not state whether he considered Dr. Woodcock's medical opinion that Mrs. Shubargo is capable only of sedentary work and did not weigh the medical experts' conflicting opinions, this case must be remanded to the Commissioner. The remand is for the limited purpose of reconsidering whether Mrs. Shubargo is disabled in light of Dr. Woodcock's RFC

evaluation and the applicable medical-vocational guidelines, and to issue a decision explaining the weight he gives the conflicting medical opinions.

The judgment of the district court is REVERSED with instructions to remand to the Commissioner for further development consistent with this order and judgment.

Entered for the Court

Timothy M. Tymkovich
Circuit Judge