**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 5 2002**

**PATRICK FISHER**
**Clerk**

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

---

BARBARA J. WHITE,

      Plaintiff - Appellant,

v.

JOANNE B. BARNHART, [1]
Commissioner of the Social Security
Administration,

      Defendant - Appellee.

No. 00-6449

---

ORDER
Filed April 5, 2002

---

Before **HENRY** , **PORFILIO** , and **MURPHY** , Circuit Judges.

---

Upon considering Barbara White's petition for rehearing, the opinion has

been altered. Part V, the section addressing the administrative law judge's

refusal to recontact the treating physician, now makes clear that this obligation

arises whenever the information received from the treating doctor is inadequate,

not when the record as a whole is inadequate. Nevertheless, the panel's rejection

---

[1]    On November 9, 2001, JoAnne B. Barnhart became Commissioner of Social
Security. In accordance with Rule 43(c)(2) of the Federal Rules of Appellate
Procedure, Ms. Barnhart is substituted for Larry G. Massanari as the appellee in
this action.

of Ms. White's claim that here the administrative law judge erred in failing to recontact Dr. Fanning is undisturbed.

Therefore, the petition for rehearing is denied.

<div style="margin-left:50%">

Entered for the Court
PATRICK FISHER, Clerk


By:
    Deputy Clerk

</div>

**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**NOV 28 2001**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

BARBARA J. WHITE,

   Plaintiff - Appellant,

v.

   No. 00-6449

LARRY G. MASSANARI,[*] Acting
Commissioner of Social Security
Administration,

   Defendant - Appellee.

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**
**(D.C. No. 99-CV-1720-M)**

---

Submitted on the briefs:

James Harris, Oklahoma City, Oklahoma, for Plaintiff-Appellant.

Daniel G. Webber, Jr., United States Attorney, Robert A. Bradford, Assistant
United States Attorney, Oklahoma City, Oklahoma, and Tina M. Waddell,
Regional Chief Counsel, Region VI, Mark J. Kingsolver, Deputy Regional Chief
Counsel, and Mary F. Lin, Assistant Regional Counsel, Office of the General
Counsel, Social Security Administration, Dallas, Texas, for Defendant-Appellee.

---

[*]  On March 29, 2001, Larry G. Massanari became the Acting Commissioner
of Social Security. In accordance with Rule 43(c)(2) of the Federal Rules of
Appellate Procedure, Mr. Massanari is substituted for Kenneth S. Apfel as the
appellee in this action.

Before **HENRY**, **PORFILIO**, and **MURPHY**, Circuit Judges.

_____

**HENRY**, Circuit Judge.

_____

Claimant Barbara White appeals from an order of the district court affirming the Commissioner's ruling that she is not entitled to Social Security disability benefits. She alleges three separate errors in the decision by the Commissioner's administrative court: 1) that it improperly disregarded the opinion of her treating physician; 2) that it did so without first seeking, as she claims it should have, additional information from that physician; and 3) that it wrongly discounted her subjective complaints of pain. Because we conclude not only that the administrative court offered legitimate and specific reasons for rejecting the treating physician's opinion, but also that it could reach that decision without recontacting the physician, and because we defer to the court's findings regarding Ms. White's subjective complaints of pain, we affirm.[1]

_____

[1]     After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

## I. STANDARD OF REVIEW AND ALJ'S DECISION

We review the Commissioner's decision to determine whether his factual findings were supported by substantial evidence and whether he applied the correct legal standards. *See Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1028 (10th Cir. 1994). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotations omitted). In the course of our review, we may "neither reweigh the evidence nor substitute our judgment for that of the agency." *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991).

Ms. White alleged disability as of May 1995 due to pain in her lower back. The administrative law judge (ALJ) ruled first that she had a severe impairment–pain. Next the ALJ concluded, again in her favor, that she had no relevant past work history. But at the last step of the five-step sequential process, the ALJ found that she was not disabled. *See Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (setting out the five-step sequential process). This conclusion rested on a finding that even though Ms. White suffered an impairment, she still could perform some light-duty work. The ALJ acknowledged that at step five in the sequential process the burden of proof shifts, and the Commissioner must show that the claimant retains the functional

capacity to do specific jobs. *See Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

## II. MEDICAL FINDINGS AND VOCATIONAL ASSESSMENT

In connection with her application for benefits, several doctors (all of them consultants for the Commissioner) either examined Ms. White or reviewed her medical records. None disputed that she suffered from chronic back pain. But at least two doctors concluded that she had sufficient residual functional capacity to perform light work, albeit with some limitations and alterations due to the pain emanating from her lower back.[2] A third consulting doctor, though not offering an opinion on Ms. White's ability to work, found on examination that Ms. White had a normal range of motion in her shoulders, elbows, wrists, and legs; that she could stand from a seated position in a reasonable amount of time; and that she could ambulate and perform fine motor movements without difficulty.

At the administrative hearing, a vocational expert testified that given Ms. White's residual functional capacity as described by the consulting physicians, there were numerous light-duty jobs available to her, including

---

[2]   Residual functional capacity consists of those activities that a claimant can still perform on a regular and continuing basis despite his or her physical limitations. *See* 20 C.F.R. § 416.945(a), (b), (c).

housekeeping, poultry dresser, electronics assembler, carding machine operator, and microfilm document preparer.

Ms. White's treating physician determined that Ms. White had a lower residual functional capacity than did the consulting physicians; that is, Ms. White's doctor imposed more restrictive limits on her (Ms. White's) ability to work. Principally, the treating physician indicated that Ms. White could lift no object weighing more than five pounds. (In contrast, the consulting physicians found that Ms. White could lift up to twenty pounds occasionally and up to ten pounds frequently.) The vocational expert testified that if the treating physician's limitation were accepted there were no jobs that Ms. White could perform. The ALJ rejected the treating physician's opinion with respect to Ms. White's work-related abilities. Ms. White contends this was error.

## III. TREATING PHYSICIAN'S OPINION

Ms. White was first examined by her treating physician, Dr. Fanning, in September 1996, more than a year after Ms. White filed her initial application for benefits. Dr. Fanning's examination notes indicate that Ms. White came to see her with a form–one seeking an assessment of Ms. White's ability to perform work-related activities–to be filled out by a physician and submitted to the Commissioner.

Dr. Fanning reported that her examination of Ms. White revealed fair strength in various muscle groups, though she noticed that Ms. White seemed to favor her right leg when she walked. Dr. Fanning stated that Ms. White could lift five to ten pounds, a conclusion that rested on Ms. White's subjective assessment of her strength as well as an X-ray of her back, which revealed she was suffering from osteoarthritis with spondylolisthesis (*i.e.*, a deformed vertebrae). Observing that Ms. White frequently shifted her weight during the examination, Dr. Fanning also stated that Ms. White could only sit ten to fifteen minutes at a time before needing to change her position. Dr. Fanning offered several other opinions as well, including that Ms. White could stand or walk for limited periods at any one time and that she faced various other restrictions with respect to working in or around heights, moving machinery, cold temperatures, or vibrations. The doctor did not explain what medical findings supported these conclusions.

In June 1997, Dr. Fanning completed a second assessment of Ms. White's ability to perform work-related activities. There is no indication in the record that this assessment was accompanied by a medical examination. Dr. Fanning now reported that Ms. White could lift no more than one to five pounds, a diminished capacity based, according to Dr. Fanning's notes, on Ms. White's own assertion that her hand was weak and that she could carry a milk container only a short distance. Dr. Fanning also repeated and expanded her earlier restrictions

with respect to Ms. White's ability to sit or stand continuously as well her limited tolerance of heights, moving machinery, and cold temperatures. Again, Dr. Fanning did not identify the medical findings supporting these limitations. Finally, Dr. Fanning signed a note stating that Ms. White was unable to return to her then-current job due to chronic back pain.

Four months later, in October 1997, Dr. Fanning issued a second notice stating that Ms. White was unable to return to work. Once again there is no indication that the note followed a medical examination. Dr. Fanning's records reveal, however, that the pain medication she had earlier prescribed was helping Ms. White. A third notice to Ms. White's employer came in December 1997; Dr. Fanning's notes from that meeting confirm a diagnosis of chronic back pain but contain no additional information. In January 1998, Dr. Fanning took another X-ray of Ms. White's back. It showed her condition was unchanged from the previous X-ray that had been taken in 1996.

## IV. DISREGARDING THE TREATING PHYSICIAN'S OPINION

The ALJ must give "controlling weight" to the treating physician's opinion, provided that opinion "is well-supported . . . and is not inconsistent with other substantial evidence." 20 C.F.R. § 1527(d)(2). We have said that a treating physician's opinion is not dispositive on the ultimate issue of disability. *Castellano*, 26 F.3d at 1029. In addition to its consistency with other evidence,

we examine a treating physician's opinion with several factors in mind: the length of the treatment relationship, the frequency of examination, and the extent to which the opinion is supported by objective medical evidence. 20 C.F.R. § 1527(d)(2).

Here the ALJ acknowledged Dr. Fanning's limited assessment of Ms. White's ability to perform work-related activities. But we agree with the district court that he set forth specific and legitimate reasons for discounting the doctor's opinion. He noted first the discrepancy between Dr. Fanning's very restrictive functional assessment and her contemporaneous examination of Ms. White, which revealed that Ms. White possessed fair physical strength in various muscle groupings. The ALJ also contrasted the detailed nature of examinations performed by at least one of the consulting doctors with that of Dr. Fanning. Specifically, the ALJ noted that the consulting physician performed more specific tests measuring Ms. White's range of motion in her legs, back, and arms, and that Dr. Fanning's examination notes were far less detailed than those of the consulting physician. He observed, for instance, that the various notices Dr. Fanning prepared stating that Ms. White was unable to return to work did not indicate they were the product of an examination. In short, the ALJ found that much of Dr. Fanning's assessment was based on Ms. White's subjective assertions rather than objective medical evidence.

Still more troubling for the ALJ was that Dr. Fanning did not explain the differences between her 1996 and 1997 assessments of Ms. White. In 1996, according to Dr. Fanning, Ms. White was capable of lifting five to ten pounds; by 1997 she could lift only one to five pounds. But X-rays showed no apparent physical change in Ms. White's back during the year between the two assessments.

Finally, the ALJ noted that the record revealed that Ms. White had only been treated by Dr. Fanning since September 1996. The treatment began more than a year after Ms. White filed her application for benefits. The ALJ further noted that Ms. White was motivated to see Dr. Fanning in part because she needed the doctor to fill out a form necessary for her disability claim.

Had we been the fact finder we may well have reached a different conclusion concerning the weight to be given Dr. Fanning's disability assessment. Nevertheless, we agree with the extraordinarily thorough report prepared by the magistrate judge and adopted by the district court, which found that the ALJ articulated adequate reasons for disregarding Dr. Fanning's opinion. In light of the narrow scope of our review, we are compelled, as was the district court, to conclude that the record contains substantial support for the ALJ's decision. In short, the record reveals that Dr. Fanning's examinations of Ms. White were limited and did not fully support her very restrictive functional assessment; that

her opinion was inconsistent with the findings of the consulting physicians; and that her treatment relationship with Ms. White was relatively brief. This is sufficient to disregard Dr. Fanning's opinion. *See* 20 C.F.R. § 1527(d)(2). That ends our analysis, for we may neither "reweigh the evidence nor substitute our judgment for the [Commissioner's]." *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994).

## V. RECONTACTING THE TREATING PHYSICIAN

In a closely related argument, Ms. White claims that the ALJ should have recontacted Dr. Fanning to obtain a more detailed medical examination and disability assessment. The Commissioner responds by blaming Ms. White for failing to carry out her "responsibility to bring forth evidence related to the disability that she claims." Appellee's Br. at 25. If by this accusation the Commissioner suggests that the ALJ's duty to recontact a treating physician is contingent on the some further act by the claimant, the Commissioner is wrong. The Commissioner, under the governing regulations, must recontact a treating physician when the information the doctor provides is "inadequate . . . to determine whether you [the claimant] are disabled." 20 C.F.R. § 416.912(e). The regulations do not burden the claimant with any additional obligation in this regard once the record is deemed "inadequate."

But that does not mean the ALJ erred here.  For it is not the rejection of the treating physician's opinion that triggers the duty to recontact the physician; rather it is the inadequacy of the "evidence" the ALJ "receive[s] from [the claimant's] treating physician" that triggers the duty.  *See id.*  The ALJ believed the information he received from Dr. Fanning was "adequate" for consideration; that is, it was not so incomplete that it could not be considered.  However, the ALJ also believed that the conclusion Dr. Fanning reached was wrong; that is, it was insufficiently supported by the record as a whole.  As we explained above, the ALJ concluded that Dr. Fanning's opinion rested heavily on Ms. White's subjective assertions of pain as opposed to objective medical evidence; that it was based on less detailed medical examinations than were the assessments of the consulting physicians; and finally, that it failed to explain the discrepancy between, on the one hand, an increasingly restrictive functional assessment and, on the other, x-ray images of Ms. White's back showing little or no physical change in her condition.

Given the nature and limits of our review, and given as well the detailed reasons offered by the ALJ for rejecting Dr. Fanning's opinion, we do not second-guess his decision.  Much of the evidence in this close case was in conflict.  The ALJ was forced to weigh all of it before reaching his decision.  As we have said

repeatedly, we are unable to now reweigh that evidence and substitute our judgment for his. *Glass*, 43 F.3d at 1395.

## VI. DISCOUNTING SUBJECTIVE COMPLAINTS OF PAIN

Ms. White next claims that the ALJ erred by failing to properly evaluate her subjective complaints of disabling pain. Specifically, Ms. White contends that the ALJ dismissed her complaints on the strength of a boilerplate recitation of law. We have condemned this practice; we insist that an ALJ give specific reasons why he or she rejects a claimant's subjective complaint of pain. *See Kepler v. Chater*, 68 F.3d 387, 390-91 (10th Cir. 1995). Our review of the ALJ's decision, however, reveals that he adhered to our prescription.

The parties do not dispute that the ALJ discounted Ms. White's complaints of pain, and that he did so in large part because he questioned her credibility. Neither do they disagree about the ability of this court to review credibility determinations. We have emphasized that credibility determinations "are peculiarly the province of the finder of fact," and should not be upset if supported by substantial evidence. *Id.* (quotation omitted). The parties differ, however, on whether the ALJ properly grounded his credibility assessment. In particular, they disagree as to whether he connected his conclusion with the objective evidence, and whether his method for reaching this credibility determination was consistent with the law of this circuit and the governing regulations.

-12-

In *Kepler v. Chater*, this court offered factors an ALJ should consider in evaluating subjective allegations of pain, an evaluation that ultimately and necessarily turns on credibility.[3] While we have insisted on objectively reasonable explanation over mere intuition, we have not reduced credibility evaluations to formulaic expressions: "*Kepler* does not require a formalistic factor-by-factor recitation of the evidence. So long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility, the dictates of *Kepler* are satisfied." *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).

Here the ALJ carefully set forth the reasons supporting his negative credibility assessment. Chief among them, he made clear, were his own observations of Ms. White. He noted that she appeared to sit comfortably during most of the lengthy administrative hearing and that she seemed to walk without difficulty. He also based his judgment on his review of the medical records as well as Ms. White's own account of her daily activities, finding both to be inconsistent with her complaints of disabling pain. Finally, the ALJ pointed to Ms. White's admission that medication relieved some of her pain to further

---

[3] Those factors are: 1) whether the objective medical evidence establishes a pain-producing impairment; 2) if so, whether there is a loose nexus between the proven impairment and the claimant's subjective allegations of pain; and 3) if so, whether considering all the evidence, claimant's pain is in fact disabling. *Kepler*, 68 F.3d at 390.

support his belief that she was capable of performing more extensive work activities than she acknowledged.

Our independent review of the record reveals that the ALJ adequately supported his credibility determination. Contrary to Ms. White's contention, this determination did not rest on mere boilerplate language, but instead was linked to specific findings of fact, findings we are compelled to accept because they are fairly derived from the record.

Again, we reach our conclusion largely in recognition of our limited role. The ALJ enjoys an institutional advantage in making the type of determination at issue here. Not only does an ALJ see far more social security cases than do appellate judges, he or she is uniquely able to observe the demeanor and gauge the physical abilities of the claimant in a direct and unmediated fashion. As a result, the ALJ's credibility findings warrant particular deference. We will not upset those findings here.

The judgment of the United States District Court for the Western District of Oklahoma is AFFIRMED.