**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**May 22, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

DEANNA ROYBAL,

        Plaintiff-Appellant,

v.

MICHAEL J. ASTRUE,[*]
Commissioner of the Social Security
Administration,

        Defendant-Appellee.

No. 06-4189
(D.C. No. 2:05-CV-2-JTG)
(D. Utah)

**ORDER AND JUDGMENT**[**]

Before **BRISCOE**, **SEYMOUR**, and **ANDERSON**, Circuit Judges.

Deanna Roybal appeals from the district court's affirmance of the Social

Security Commissioner's denial of her application for Social Security disability

---

[*]      Pursuant to Fed. R. App. P. 43(c)(2), Michael J. Astrue is substituted for
Jo Anne B. Barnhart as appellee in this action.

[**]     After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and
collateral estoppel. It may be cited, however, for its persuasive value consistent
with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

and Supplemental Security Income payments. We have jurisdiction under 42 U.S.C. § 405(g) and 28 U.S.C. § 1291, and we AFFIRM.

I

Ms. Roybal was born in 1969. She completed high school and one year of college. For about seven years, she worked as a library assistant, then she spent three years working in customer service for a check printing company. In the summer of 2001, however, her mother became so ill in her battle with cancer, diabetes, and kidney problems that Ms. Roybal had to quit work to look after her. When she quit, she lost her insurance benefits, so she was no longer able to afford the medications that her doctor had prescribed for depression and anxiety over the past couple of years.

Sadly, Ms. Roybal's mother lost her battle in January 2002. With her mother's death, Ms. Roybal's depression and anxiety disorders became more severe. On February 6, she began seeing Dora Norton, M.D., who noted that Ms. Roybal reported that "she has struggled with depressed mood, tearfulness, anhedonia, low energy, low appetite, and sleep disturbances." Aplt. App. at 145. Dr. Norton diagnosed her with "Major Depression ['recurrent, severe, without psychotic features'] and issues of grief surrounding the recent death of her mother." *Id.* at 147. Dr. Norton later added a diagnosis of panic disorder with agoraphobia. In a statement signed on April 24, 2002, she stated that Ms. Roybal "is emotionally labile and withdrawn," "currently unable to perform activities of

daily living, including shopping, working, and driving," and "neglects her own self-care and nutritional needs." *Id.* at 129, 131. She assessed a current global assessment of functioning (GAF) score of 30, up from 20,[1] and she opined that "[p]rognosis will improve with further treatment," which she estimated would take at least four to six months. *Id.* at 131. She continued to see Ms. Roybal periodically in 2002. When Ms. Roybal indicated in October that she had not been compliant with therapy because of financial issues, Dr. Norton discussed a temporary $5 charge for therapy sessions.

On November 19, 2002, Dr. David Ericksen, Ph.D., performed a consultative examination. He diagnosed Ms. Roybal with a major depressive disorder, recurrent, and panic disorder with agoraphobia, and he assessed her with a GAF score of 52.[2] He concluded that "[t]he present findings suggested that this claimant's ability to maintain concentration and attention is moderately impaired. Her speed of cognitive processing is quite slow and her ability to tolerate work

---

[1]  The GAF is a subjective determination based on a scale of 100 to 1 of "the clinician's judgment of the individual's overall level of functioning." Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 32 (Text Revision 4th ed. 2000) (*DSM-IV*). A GAF score of 21-30 indicates "[b]ehavior is considerably influenced by delusions or hallucinations" or that a claimant suffers from "serious impairment in communication or judgment" or that she has an "inability to function in almost all areas." *Id*. at 34.

[2]  A GAF score of 51-60 indicates "moderate symptoms," or "moderate difficulty in social, occupational, or school functioning." *DSM-IV* at 34.

stress is very poor. She is capable of understanding, remembering, and carrying out simple instructions." *Id.* at 134.

For reasons not revealed in the record, Ms. Roybal apparently sought no treatment for her mental disorders between her last visit with Dr. Norton on December 11, 2002, and her first visit to Valley Mental Health on August 14, 2003. There, she primarily saw Licensed Clinical Social Worker Linda Lasley and Nusrat Ahmed, M.D. At the intake visit, Ms. Lasley noted that Ms. Roybal reported a suicide attempt two weeks before. Ms. Lasley's diagnosis was "Major Depressive Disorder, single episode, moderate," "Dysthymic Disorder," and "Generalized Anxiety Disorder," with a GAF score of 50.[3] *Id.* at 200.

Dr. Ahmed's first contact with Ms. Roybal was on September 12, 2003. He noted that she "presents with major depressive symptoms and symptoms of panic disorder with agoraphobia." *Id.* at 198. His exam revealed that Ms. Roybal "is alert and oriented x 3. She exhibits psychomotor retardation. Her affect is blunted. Her mood is depressed. Thought process is slow and logical. . . . Her cognitive functions are intact. She has fair insight and good judgment." *Id.* He diagnosed her with "Major Depression, recurrent, moderate" and "Panic Disorder with Agoraphobia" and assessed a GAF score of 45. *Id.* at 199. Ms. Roybal

---

[3] A GAF score of 41-50 indicates "[s]erious symptoms" or "serious impairment in social, occupational, or school functioning." *DSM-IV* at 34.

continued visiting Valley Mental Health through the date of her administrative hearing.

At her hearing on February 23, 2004, Ms. Roybal testified that in 2002, she was able to do some things around the house, but that she was only able to do activities outside the house if she went with a friend. She further testified that in 2003, she continued to do light meal preparation and take care of herself and her apartment. She also stated she did not go on any trips or vacations, and that she attempted suicide in July or August of that year. Paramedics were called to her house, and they treated the cuts on her wrists with band-aids. Her outings were limited to trips to the library with her friend to get videos. In both 2002 and 2003, she made one trip a month to the grocery store, spending about two hours per visit. She testified that if her friend needed her to take him to the hospital in an emergency, she could not do it, because "[t]hat would be something where I was needed. I'm not really good if people need me. I'm really apt to needing others." Aplt. App. at 215.

The administrative law judge (ALJ) found Ms. Roybal's testimony not entirely credible, stating that " [t]he ALJ does not find the claimant's functional allegations, and conclusion of total disability, to be reasonably consistent with the objective medical evidence and non-medical evidence, when considered as a whole." *Id.* at 36. The ALJ noted that Ms. Roybal had quit work to care for her mother, not because of her mental impairments, and that before that she had

-5-

engaged in "successful work attempts at the substantial gainful level." *Id.* The ALJ further cited four specific reasons to discredit Ms. Roybal's testimony. First, the ALJ found that inconsistencies in her testimony about being able to help her friend "goes to motivation in that when claimant needs food and other necessities, she can go; but, when a friend needs help, she is unable to help. Clearly then, claimant is able to be quite functional when she exerts the effort required by the legal standards that must be followed in this case, i.e., what is the most she can do despite her impairments." *Id.* Second, Ms. Roybal had testified that she did not take any trips or vacations, but the record showed that in November 2003, she traveled to North Carolina with her friend and then returned to Utah by herself on the bus. Third, the ALJ noted "that many of claimant's symptoms arise from fights from her boyfriend and family members, as brought out in numerous individual therapy sessions. It would appear that a reasonable work environment would be more conducive to emotional health and allow for some work." *Id.* Finally, the ALJ stated that the record did not contain any medical opinions, either from treating or examining physicians, indicating that Ms. Roybal was totally disabled or that she had limitations greater than those assessed by the ALJ.

The ALJ concluded that Ms. Roybal did not meet or equal any applicable impairment Listing and that she could not return to her former jobs, but that she had the residual functional capacity (RFC) to perform unskilled work at no more than low stress, concentration, and memory levels. Relying on the testimony of a

vocational expert, the ALJ concluded that there were jobs in the national economy that Ms. Roybal was able to perform and denied her application at step five of the five-step analysis. The Appeals Council denied review, and the district court affirmed the agency's decision. Ms. Roybal appeals.

II

Ms. Roybal presents two arguments on appeal. First, she contends that the ALJ failed to analyze her treating medical sources' opinions properly. Second, she argues that the ALJ failed to assess her credibility properly.

"Because the Appeals Council denied review, the ALJ's decision is the Commissioner's final decision for purposes of this appeal." *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004) (citing *Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003)). Our standards of review in Social Security cases are familiar:

> In reviewing the ALJ's decision, we "neither reweigh the evidence nor substitute our judgment for that of the agency." *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). Instead, we review the ALJ's decision only to determine whether the correct legal standards were applied and whether the ALJ's factual findings are supported by substantial evidence in the record. *Doyal*, 331 F.3d at 760. "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted).

*Id.*

A

Ms. Roybal first complains that the ALJ did not analyze her treating medical sources' opinions under the rubric established in *Watkins v. Barnhart*, 350 F.3d 1297 (10th Cir. 2003). There, we explained that an ALJ must determine whether to give a treating medical source's opinion "controlling weight," and, if not, to determine what deference the opinion is due using the factors set forth in the regulations. *Id.* at 1300-01. We also stated that the ALJ's determination regarding the weight assigned to a treating physician's opinion "'must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Id.* at 1300 (quoting Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5).

Here, the ALJ discussed much of the medical evidence but did not explicitly explain what weight was assigned to Dr. Norton's and Dr. Ahmed's opinions.[4] In this case, however, we do not believe the ALJ's failure requires reversal because the ALJ did not reject the treating physicians' opinions or weigh them unfavorably in concluding that Ms. Roybal was not entitled to benefits. "When the ALJ does not need to reject or weigh evidence unfavorably in order to

_____

[4] To the extent that Ms. Roybal complains that the ALJ did not appropriately weigh Ms. Lasley's notes, a licensed clinical social worker is not an acceptable medical source and thus is not entitled to controlling weight. *See Branum*, 385 F.3d at 1272.

-8-

determine a claimant's RFC, the need for express analysis is weakened." *Howard v. Barnhart*, 379 F.3d 945, 947 (10th Cir. 2004).

The ALJ adopted the diagnoses of Dr. Norton and Dr. Ahmed in finding that Ms. Roybal suffers from the severe impairments of a major depressive disorder and a panic disorder with agoraphobia. And as the ALJ noted, Dr. Norton's and Dr. Ahmed's notes generally do not contradict the ALJ's findings. The medical evidence indicates that Ms. Roybal was disabled for several months immediately following her mother's death. *See* Aplt. App. at 143 (Dr. Norton's March 2002 notation that Ms. Roybal "expressed that she is extremely anxious to leave the apartment . . . and avoids doing so at all measures"); *id.* at 129 (Dr. Norton's April 24, 2002, statement that Ms. Roybal "is currently unable to perform activities of daily living, including shopping, working, and driving. She is dependent on one friend to help her meet her needs and without his assistance would likely have grave self-care deficits."). The ALJ recognized these limitations. *Id.* at 34 ("At that time, claimant was unable to perform activities of daily living and was isolating herself."). As the ALJ also noted, however, the record indicates that Ms. Roybal's condition gradually improved. Particularly, while the medical record indicates Ms. Roybal suffered some setbacks in treatment, her treating physicians' notes or opinions do not require a finding that her condition continued to be totally disabling for the minimum twelve-month period required for benefits. *See* Aplt. App. at 142 (Dr.

Norton's April 19, 2002, notation that Ms. Roybal "experiences an elevation in mood, brightening of affect over the past month. Energy level improving, sleep & appetite are approaching [normal level] for her. No longer anhedonic. Now suggesting to do recreational activities (e.g., going to church, piercing tongues) [with] friend"); *id.* at 131 (Dr. Norton's April 24, 2002, statement that "[p]rognosis will improve with further treatment for depression and anxiety," with treatment expected to last four to six months); *id.* at 141 (Dr. Norton's May 22, 2002, notation that "Deanna has noted some improvement [on] clonazepam and is gaining confidence"); *id.* at 139 (September 2002 notation by another doctor that Ms. Roybal asked for medications because she was going out of town for three weeks). Moreover, there is an eight-month period, from December 11, 2002, to August 14, 2003, when Ms. Roybal apparently sought no psychological treatment, so no treating physicians' notes or opinions are available for a portion of the period under consideration.

While it is preferable that an ALJ employ the *Watkins* analysis, we do not consider the ALJ's failure in this instance to require reversal. Moreover, the ALJ's analysis is supported by substantial evidence in the record. Accordingly, we shall not disturb the decision.

B

Ms. Roybal also argues that the ALJ erred in assessing her credibility. "Credibility determinations are peculiarly the province of the finder of fact, and

we will not upset such determinations when supported by substantial evidence." *Diaz v. Sec'y of Health & Human Servs.*, 898 F.2d 774, 777 (10th Cir. 1990). As we have acknowledged, the ALJ's credibility determinations "warrant particular deference" because "[t]he ALJ enjoys an institutional advantage in making the type of determination at issue here. Not only does an ALJ see far more social security cases than do appellate judges, he or she is uniquely able to observe the demeanor . . . of the claimant in a direct and unmediated fashion." *White v. Barnhart*, 287 F.3d 903, 910 (10th Cir. 2001). Credibility determinations, however, cannot be based on intangible or intuitive reasons, but "must be grounded in the evidence and articulated in the determination or decision." Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *4; *see also Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (credibility determination "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." (internal quotation marks omitted)).

The ALJ cited several reasons to discount Ms. Roybal's credibility. She argues that the ALJ's reasons were incorrect and/or insufficient to support the decision. Given the nature of the mental impairments at issue, we acknowledge that the ALJ may have erred in finding that Ms. Roybal's testimony about her inability to help her friend to the hospital was inconsistent with her other activities. Any such error in this case does not justify reversal, however, because the ALJ's other reasons for discounting Ms. Roybal's credibility are supported by

-11-

substantial evidence. Particularly, Ms. Roybal testified at the hearing that she did not take any trips or vacations in 2003 and that she would not have taken a free trip had it been offered, Aplt. App. at 211, and yet her medical records reflect that she took a trip to North Carolina with her friend in November 2003. Her decision to cut that visit short and return by herself to Utah on a bus also indicates that, when she has to, she can undertake activities outside her house by herself and she can take care of herself. Further, the ALJ's comment that Ms. Roybal's situation may be improved by working is not sheer speculation, but is supported by the opinion of a consulting physician. *Id.* at 181. Finally, as discussed above, the available treating-physician notes and opinions do not necessarily contradict Ms. Roybal's assessed RFC.

It cannot be gainsaid that Ms. Roybal suffers from severe mental disorders. On this record, however, we cannot say that the ALJ's credibility findings are not supported by substantial evidence.

## III

Ms. Roybal's motion to file a reply brief is GRANTED, and the reply brief is accepted for filing as of January 5, 2007, the date it was delivered to this court. The judgment of the district court is AFFIRMED.

Entered for the Court

Stephen H. Anderson
Circuit Judge

-12-