**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**October 31, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

BEATRICE GUTIERREZ,

   Plaintiff-Appellant,

v.

MICHAEL J. ASTRUE, Commissioner
of the Social Security Administration,

   Defendant-Appellee.

No. 07-2057
(D.C. No. CIV-06-16-JH/KBM)
(D. N.M.)

---

**ORDER AND JUDGMENT**[*]

---

Before **PORFILIO**, **ANDERSON**, and **BALDOCK**, Circuit Judges.

---

Beatrice Gutierrez appeals an order of the district court that affirmed a final

decision of the Commissioner of the Social Security Administration

(Commissioner) that she was not disabled and thus not entitled to benefits.

We have jurisdiction under 28 U.S.C. § 1291 and we affirm.

---

[*]   After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## Background

In the mid-1990's, Ms. Gutierrez was diagnosed with diabetes, hypertension, hypothyroidism, edema, and obesity. After working for the State of New Mexico for twenty-five years as a caseworker supervisor, she retired in 1997 to spend more time with her family. Following retirement, she worked briefly in 1998 as a waitress and cashier at a restaurant; however, she left that job after she hurt her knee and the business closed. Because she "was just burnt out," Aplt. App. at 416, she did not look for any work until 1999.

On January 29, 2004, Ms. Gutierrez filed an application for disability benefits in which she alleged disability as of September 1, 2001, due to CREST syndrome,[1] osteopenia, lymphedema, diabetes, and hypothyroidism. Following the administrative denial of her application, she appeared with a lay representative for an administrative hearing on March 21, 2005. On May 23, 2005, an administrative law judge (ALJ) issued a written decision denying her application. Thereafter, the Appeals Council denied her request for review. Acting on her complaint filed in federal district court, a magistrate judge issued a report and recommendation that affirmed the Commissioner's decision. The report and recommendation was adopted by the district court and this appeal followed.

---

[1]    CREST syndrome is "a variant of systemic *sclerosis* characterized by *c*alcinosis, *R*aynaud phenomenon, *e*sophageal motility disorders, *s*clerodactyly, and *t*elangiectasia." *Stedman's Medical Dictionary* 1751 (27th ed. 2000).

**Medical Record**

On June 15, 2001, Ms. Gutierrez saw her treating physician, David Cummings, M.D., about her edema. In a follow-up visit on June 22, she reported "doing much better," *id*. at 301, however, she did have bursitis in her right elbow.

Dr. Cummings next saw Ms. Gutierrez on July 6, 2001, when he treated her for a "mild crush injury to her right foot," *id*. at 298, suffered in a motorcycle accident. At this same appointment, and on the basis of her report of morning stiffness and prior lab tests that showed "mild anemia," Dr. Cummings "wonder[ed] if this might be an anemia of chronic disease." *Id*. Therefore, he ordered further lab tests to rule out autoimmune disease.

Ms. Gutierrez returned to Dr. Cummings on August 9, 2001. There was fluid on her right elbow and lab results showed the need for further assessment of a possible autoimmune condition. Dr. Cummings referred her to Roderick Fields, M.D. for the autoimmune condition and an orthopedist for removal of the fluid. However, she did not follow up with Dr. Fields until nearly five months after the referral. In the meantime, she saw Dr. Cummings on two occasions, but did not report any symptoms of autoimmune disease.

When Dr. Fields first examined Ms. Gutierrez on January 3, 2002, he though it "likely" that she had CREST syndrome, *id*. at 218, and he prescribed hydroxychloroquine. As of July 23, 2003, Dr. Fields was still of the opinion that she "probably [has] CREST syndrome." *Id*. at 179. Although Dr. Fields

continued to see Ms. Gutierrez every few months through 2004, none of his notes indicate that her condition prevented her from working.  In fact, through mid-2004, his records show no joint swelling, deformity, limited range of motion, tenderness, crepitus, or trigger points in either her upper or lower extremities.

Similarly, although Ms. Gutierrez continued to see Dr. Cummings on a regular basis for treatment of her diabetes, hypertension, hypothyroidism, edema, and obesity, none of his notes say that any of these conditions prevented her from working.  To the contrary, the notes reflect that Ms. Gutierrez continued to work through 2003,[2] and that her conditions were generally well-controlled with medications.[3]

On December 29, 2003, two days before the last date she was insured for disability benefits, she saw Dr. Cummings, who admitted her to the hospital.  The admission diagnosis was "gastrointestinal hemorrhage," *id*. at 143, and the results

---

[2]     For example:  (1) on April 4, 2001, Ms. Gutierrez reported trying to quit smoking and that "[w]ith [] changes in the law it is going to be hard for her to smoke anyway while she is working," *id*. at 306; (2) on June 22, 2001, she reported "wear[ing] her compression stockings at work," *id*. at 301; (3) on January 18, 2002, she was "having trouble managing her diabetes because she is under a lot of stress having to look after her mother[,] . . . helping with her deceased sister's husband and continuing to work," *id*. at 292; (4) on February 7, 2003, "[s]he was ambulating at work when she . . . felt a twist in her knee," *id*. at 134; and (5) on October 30, 2003, she asked for a "note to return to work. She has been off after her fall [on September 11, 2003] and injury to her foot," *id*. at 247.

[3]     Control of Ms. Gutierrez's diabetes varied as a result of her inconsistent efforts to follow a proper diet, test her blood-sugar levels, or take her medication.

of an upper gastrointestinal endoscopy revealed "[e]sophageal varices [and] [m]inimal gastritis." *Id*. at 146. On a follow up visit to Dr. Cummings on January 26, 2004, Ms. Gutierrez complained of weakness and dizziness and he referred her to Dominic Wong, M.D. who later diagnosed her with biliary cirrhosis and esophageal varices secondary to CREST syndrome. At various times throughout 2004, Dr. Wong performed four successful out-patient procedures to treat the varices.

Mid-way through Dr. Wong's treatment and following the administrative denial of her claim, Dr. Cummings wrote a letter on May 28, 2004 to the Commissioner offering his opinion that Ms. Gutierrez was disabled.

> Ms. Gutierrez has applied for disability and apparently has been turned down. She has autoimmune disease, which has caused multiple joint and muscle symptoms. In the past this has disabled her from working. Initially she was doing better with medications started by the rheumatologist back in 2001. She unfortunately had an upper GI bleed earlier this year and subsequently was found to have biliary cirrhosis and esophageal varices secondary to her autoimmune disease. This has limited our ability to use a number of medications with her and her diabetes has subsequently become poorly controlled. Her autoimmune disease, diabetes, obesity and liver cirrhosis with pulmonary hypertension all go together to effectively disable her from gainful employment.
>
> I am going to ask the patient to get letters from her rheumatologist, Dr. Fields, and her gastroenterologist, Dr. Wong, regarding her conditions. Thanks for your consideration[].

*Id*. at 226.

Dr. Fields wrote to the Commissioner on October 24, 2004, that Ms. Gutierrez "has CRST syndrome, primary biliary cirrhosis with a history of bleeding esophageal varices, and fibromyalgic pain. I agree with disability evaluation for the patient." *Id*. at 349. The record reveals that Dr. Fields' diagnosis of fibromyalgia was not made until June 6, 2004, at the earliest. No letter was received from Dr. Wong.

### The ALJ's Decision

The ALJ determined that Ms. Gutierrez's date last insured was December 31, 2003. He considered all of the conditions mentioned in her medical records, and found they were not severe or did not meet any of the Commissioner's Listing of Impairments. Based on the testimony of a vocational expert, he further found that she retained the residual functional capacity to perform a limited range of sedentary work. He concluded that she was not disabled and denied benefits.

### Analysis

We review the ALJ's decision "to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004) (quotation and citation omitted).

Ms. Gutierrez argues first that the ALJ should have recontacted Dr. Cummings pursuant to 20 C.F.R. § 404.1512(e) on the basis of his May 28, 2004, letter that opined she was disabled. We disagree because the duty to recontact a medical source is not triggered unless the evidence "is inadequate . . . to determine whether [the claimant is] disabled." *Id.*; *see also White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002). There was not only adequate, but substantial evidence in the record to support the ALJ's conclusion that Ms. Gutierrez was not disabled. Also, the decision regarding disability is reserved to the Commissioner, *id*. at 907, and the fact that Dr. Cummings had a different opinion than the ALJ is not the type of evidentiary conflict or ambiguity that required further contact.

The next alleged error is the ALJ's failure to call a medical expert pursuant to Social Security Ruling 83-20, 1983 WL 31249 (S.S.A. 1983) (SSR 83-20) to determine the onset date of Ms. Gutierrez's disability. This argument also fails because the need to determine an onset date is relevant only where a claimant has been found disabled: "The onset date of disability is the first day an individual is disabled as defined in the Act and the regulations." *Id*. at *; *see also Blea v. Barnhart*, 466 F.3d 903, 908-10 (10th Cir. 2006) (applying SSR 83-20 in a case where the claimant was found disabled but the onset date was unclear).

Last, Ms. Gutierrez asserts that the ALJ's hypothetical question to the vocational expert was deficient because it did not properly define her alleged inability to concentrate. We agree that "[t]estimony elicited by hypothetical

questions that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the [Commissioner's] decision." *Hargis v. Sullivan*, 945 F.2d 1482, 1492 (10th Cir. 1991) (quotation omitted). However, "such inquiries must include all (and only) those impairments borne out by the evidentiary record." *Evans v. Chater*, 55 F.3d 530, 532 (10th Cir. 1995). Because the ALJ found that Ms. Gutierrez's depression (from which she claimed her inability to concentrate stemmed) was not severe, he was not required to include this limitation in his hypothetical question to the vocational expert.

The judgment of the district court is AFFIRMED.

Entered for the Court

Bobby R. Baldock
Circuit Judge