FILED
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

**December 23, 2022**

**Christopher M. Wolpert**
**Clerk of Court**

SANDRA MILETO,

    Plaintiff - Appellant,

v.

COMMISSIONER, SSA,

    Defendant - Appellee.

No. 21-1403
(D.C. No. 1:20-CV-01866-KMT)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HOLMES**, Chief Judge, **HARTZ**, and **ROSSMAN**, Circuit Judges.
_____

Sandra Mileto appeals from the district court's decision upholding the denial by

the Commissioner of Social Security of her application for disability insurance benefits.

Exercising jurisdiction under 28 U.S.C. § 1291 and 42 U.S.C. § 405(g), we affirm.

**I.  Background**

Ms. Mileto filed for benefits in May 2018, alleging disability based on both

physical and mental impairments.  Her application was initially denied, after which an

ALJ held a de novo hearing in October 2019.  The ALJ issued a decision in November

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument.  *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  This order and judgment
is not binding precedent, except under the doctrines of law of the case, res judicata,
and collateral estoppel.  It may be cited, however, for its persuasive value.  *See*
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

2019 finding Ms. Mileto not disabled under the Social Security Act.  The Appeals Council denied Ms. Mileto's request for review, thereby rendering the ALJ's decision the final agency decision for purposes of judicial review.

### A.  Medical Records and Opinion Evidence

Ms. Mileto alleged that she was disabled beginning in June 2017 due to Raynaud's disease,[1] neck and back problems, and depression.  She had cervical spine surgery in 2000 after a car accident, and another car accident in April 2013 resulted in severe frostbite to her hands and feet.  She reported residual pain and temperature sensitivity in her hands and feet, which was treated with neuropathic pain medication.

In 2016, Ms. Mileto underwent a neurological workup, electromyography study, CT scan, and nerve conduction studies.  The results indicated "that the tingling and nerve symptoms are from the frostbite versus from a cervical or nerve issue in the nerve pathway," and that there was "no evidence of dynamic instability" in her cervical spine. R. vol. II at 310.  The progress notes reported that Ms. Mileto was "very happy" with the results and that she would continue to take pain medication for her hands.  *Id.*

For her general healthcare needs Ms. Mileto went to Peak Vista Community Health Center, where she frequently received treatment from Richard White, a physician assistant, for hand pain and other ailments from 2016 to 2019.  For example, in November 2016 she reported neck pain and stiffness for which Mr. White recommended

---

[1] Raynaud's disease or Raynaud phenomenon is defined as "spasm of the digital arteries, with blanching and numbness or pain of the fingers, often precipitated by cold."  *Raynaud phenomenon*, *Stedman's Medical Dictionary* (27th ed. 2000).

muscle relaxers, applying heat to the affected area, and gentle stretching. She also saw Mr. White twice in August 2017 concerning "moderate" symptoms of anxiety and depression, R. vol. II at 336, and low back pain. Throughout the treatment records, Mr. White assessed Ms. Mileto with Raynaud's disease. Mr. White completed a residual functional capacity (RFC) questionnaire in September 2019 in connection with Ms. Mileto's disability claim. He opined that Ms. Mileto had several limitations, including: she could lift no more than 10 pounds; she could use her hands, fingers, and arms for only 5 to 10% of the workday; she could stand or walk less than two hours total and could stand continuously for no more than five minutes at a time; and she would miss work four or more days per month.

In August 2018 Ms. Mileto visited Dr. Ashley Schinske for a physical evaluation in connection with her disability claim. Ms. Mileto showed a normal, symmetric gait and normal range of motion throughout except for some limitation in her neck. Although she had mild discomfort with motion of her neck and low back, she had no discomfort in any other joints. Dr. Schinske observed an inconsistency between Ms. Mileto's ability to use and tolerate pressure to her hands during examination, as opposed to "her ability to do the same during general observations during [the] interview." R. vol. II at 387. She also observed that although Ms. Mileto refused some neurological evaluation of her hands and feet due to pain, her writing sample was consistent with adequate fine motor skills. Based on her evaluation and in contrast to Mr. White's opinion, Dr. Schinske opined that Ms. Mileto could lift and carry 20 pounds occasionally and 10 pounds frequently; occasionally perform postural activities such as bending and crouching; occasionally

perform activities such as grasping and fingering; and had no limitations in her ability to sit, stand, or walk.

In addition, Ms. Mileto was examined by Dr. LeAnna DeAngelo, PhD, a licensed psychologist, for a psychological evaluation in connection with her disability claim. Dr. DeAngelo reported that Ms. Mileto initially presented as friendly and smiling. But she gradually became quite upset when discussing past traumatic experiences, so Dr. DeAngelo then decided to ask only the questions necessary to complete her evaluation. Dr. DeAngelo reported that Ms. Mileto exhibited mild impairment in delayed memory but normal immediate memory, and that her concentration was within normal limits. Dr. DeAngelo opined that Ms. Mileto had marked impairment in her ability to perform complex tasks and complete an average workday without interruption from psychological conditions, and mild to moderate impairment in her other work-related mental abilities.

## B. Administrative Proceedings and District Court Judgment

Ms. Mileto's claim was denied initially and by the ALJ after an administrative hearing. The ALJ followed the five-step sequential evaluation process for the consideration of disability claims. *See Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (summarizing steps). The ALJ found that Ms. Mileto possessed the RFC to perform light work. Citing testimony of a vocational expert that Ms. Mileto could perform work existing in significant numbers in the national economy, the ALJ concluded at step five of the sequential evaluation process that she did not satisfy the definition of disability.

The Appeals Council then denied Ms. Mileto's request for review, making the ALJ's decision final for purposes of judicial review. *See* 20 C.F.R. § 422.210(a). Ms. Mileto appealed the agency decision to the district court, which affirmed it. Ms. Mileto timely appealed, arguing the ALJ improperly weighed the opinions of Mr. White and Dr. DeAngelo.

## II.  Discussion

We review the ALJ's decision to determine whether substantial evidence in the record as a whole supports the ALJ decision and whether the ALJ applied the correct legal standards. *See Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks omitted). This "threshold . . . is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "Evidence is insubstantial if it is overwhelmingly contradicted by other evidence." *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994). We may neither reweigh evidence nor substitute our judgment for the Commissioner's. *See Hendron*, 767 F.3d at 954.

Under the revised regulations applicable here, the ALJ does "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . including those from [the claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Rather, the ALJ considers the persuasiveness of those opinions using five factors: supportability; consistency; relationship with the claimant; specialization; and other factors such as "a medical source's familiarity with the other evidence in a claim."

5

*Id.* §§ 404.1520c(c), 416.920c(c).  The most important factors are supportability and consistency.  *See id.* §§ 404.1520c(a), 416.920c(a).

Ms. Mileto argues the ALJ erred in his RFC determination.  This argument is based on Ms. Mileto's specific contention that the weight the ALJ afforded the opinions of Mr. White and Dr. DeAngelo was not supported by substantial evidence.  We disagree.

### A.  The ALJ's Evaluation of Mr. White's Opinion

We hold the ALJ did not err in finding that the limitations identified by Mr. White were not supported by objective medical evidence.  In support of his opinion on Ms. Mileto's RFC, Mr. White largely cited her subjective complaints of numbness and neck, hand, and foot pain.[2]  But "[a] claimant's subjective allegation of pain is not sufficient in itself to establish disability."  *Thompson v. Sullivan*, 987 F.2d 1482, 1488 (10th Cir. 1993) ("Before the ALJ need even consider any subjective evidence of pain, the claimant must first prove by objective medical evidence the existence of a pain-producing impairment that could reasonably be expected to produce the alleged disabling pain." (citations omitted)).  The ALJ's finding was an appropriate application of the supportability factor.  *See* 20 C.F.R. § 404.1520c(c)(1) (supportability examines how closely connected a medical opinion is to the objective medical evidence).

The ALJ also found Mr. White's opinion inconsistent with Ms. Mileto's exam findings, which generally reflected few abnormalities. In addition, Dr. Schinske reported

---

[2] On one part of the form, Mr. White identified Raynaud's disease as the basis for his opinion that Ms. Mileto has significant limitations with reaching, handling, or fingering.  But the ALJ noted that there was no objective evidence of Raynaud's disease and that all testing had been negative.

that except for cervical limitations, Ms. Mileto showed a normal, symmetric gait and normal range of motion with little to no discomfort. Mr. White's opinion was also inconsistent with the results of a neurological workup, electromyography study, CT scan, and nerve conduction study—all of which were normal and included findings that Ms. Mileto showed normal range of motion. The ALJ's findings were supported by substantial evidence in the record as a whole and appropriately applied the consistency factor. *See* 20 C.F.R. § 404.1520c(c)(2) (persuasiveness of a medical opinion correlates with its degree of consistency with evidence from other medical sources).

Ms. Mileto argues that the ALJ inappropriately substituted his own medical judgment in finding Mr. White's opinion inconsistent with Ms. Mileto's "conservative treatment history." R. vol. I at 29. She contends that Ms. Mileto's "medical providers' decision to proceed with non-intrusive medical treatments does not translate to non-severe limitations." Opening Br. at 27. While the severity of a physical impairment does not necessarily correlate with the intrusiveness of a course of treatment, *see Shaw v. Chater*, 221 F.3d 126, 134-35 (2d Cir. 2000), we discern no error where, as here, the ALJ identified additional reasons, supported by substantial evidence, for finding Mr. White's opinion unpersuasive. *See Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008) (conservative treatment regimen may support the Commissioner's conclusion that a claimant is not disabled if that fact is accompanied by other substantial evidence in the record).

In short, the ALJ's evaluation of Mr. White's opinion was supported by substantial evidence in the record as a whole.

### B. The ALJ's Evaluation of Dr. DeAngelo's Opinion

Dr. DeAngelo opined that Ms. Mileto was impaired in her mental abilities. She asserted that Ms. Mileto's psychological conditions impaired her ability to perform complex tasks and complete an average workday without interruption, and that she had mild to moderate impairment in her other work-related mental abilities. Considering the supportability and consistency factors, the ALJ found that Dr. DeAngelo's opinion was not persuasive. We hold that the ALJ's finding is supported by substantial evidence.

First, the ALJ found Dr. DeAngelo's opinion inconsistent with the normal mental-status examination findings of Ms. Mileto's treating providers. Although the ALJ acknowledged that the treatment records reflect that Ms. Mileto occasionally appeared tearful, anxious, or irritable, she repeatedly demonstrated normal memory, insight, and judgment. Accordingly, the ALJ found that while Ms. Mileto's anxiety or irritability would preclude her ability to perform complex or detailed tasks, "the relative normalcy of her mental status exams . . . demonstrate that she is able to perform simple tasks that can be learned in 30 days or less, consistent with unskilled work activity with routine tasks and simple decision-making and non-production type work." R. vol. I at 28. This finding is supported by substantial evidence in the record.

Second, the ALJ found that Dr. DeAngelo's opinion that Ms. Mileto has marked mental limitations was not supported by her own mental-status examination findings. *See White v. Barnhart*, 287 F.3d 903, 907 (10th Cir. 2001) (affirming ALJ's disregard of treating physician's opinion because of discrepancies between physician's opinion and observations during examination). In particular, Dr. DeAngelo observed that Ms. Mileto

8

was friendly and smiling with full range of affect, and that she displayed normal immediate memory, mathematical ability, concentration, and judgment and reasoning. Again, the ALJ's finding resulted from an appropriate application of the consistency factor and is supported by substantial evidence in the record.

### III.  Conclusion

For the foregoing reasons, the judgment is affirmed.

Entered for the Court

Harris L Hartz
Circuit Judge