**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 5, 2024**

**Christopher M. Wolpert**
**Clerk of Court**

## UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

_____

CYNTHIA K. MILLER,

    Plaintiff - Appellant,

v.

COMMISSIONER, SSA,

    Defendant - Appellee.

No. 23-4034
(D.C. No. 2:21-CV-00704-DBP)
(D. Utah)

_____

## ORDER AND JUDGMENT[*]
_____

Before **BACHARACH**, **BALDOCK**, and **MORITZ**, Circuit Judges.
_____

Cynthia K. Miller appeals from the district court's decision affirming the

Social Security Commissioner's denial of her application for Supplemental Security

Income (SSI) and Social Security Disability Insurance (SSDI) benefits under the

Social Security Act (Act).  Exercising jurisdiction under 28 U.S.C. § 1291 and

42 U.S.C. § 405(g), we affirm.

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal.  _See_ Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore ordered submitted without oral argument.  This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## I.     Background

Ms. Miller applied for SSI and SSDI benefits in 2007, alleging disability since 2006.  As relevant here, her alleged disability stemmed from her post-traumatic stress disorder (PTSD), headaches, and hand arthritis.  She worked for about five years before she applied for benefits, but has not worked since then.  An administrative law judge (ALJ) denied her application in 2009.  Following several remands by both the Appeals Council and the district court, Ms. Miller filed a second SSI application in 2017 that was consolidated with her 2007 applications.

A different ALJ held a de novo hearing in 2018 at which Ms. Miller and a vocational expert testified.  Based on that testimony, the medical source opinions, and his review of Ms. Miller's medical records and other evidence, the ALJ determined that she was not disabled and not entitled to SSI or SSDI benefits.  As relevant to the issues on appeal, the ALJ determined that Ms. Miller had severe mental and physical impairments, including PTSD, that "significantly limit [her] ability to perform basic work-related activities," Aplt. App., vol. 6 at 1168, but that her headaches and hand arthritis were not medically determinable and/or not severe, *see id.* at 1169.  The ALJ then assessed Ms. Miller's workplace limitations and determined that she had the residual functional capacity (RFC) to perform a range of unskilled "light exertion work" involving "simple, routine, and repetitive tasks." *Id.* at 1172.  Based on this RFC determination and the vocational expert's testimony, the ALJ determined that, although Ms. Miller could not return to her past work, she could perform work existing in significant numbers in the national economy.

After the Appeals Council rejected Ms. Miller's exceptions to the ALJ's decision, she sought review in district court. The parties consented to jurisdiction by a magistrate judge, who upheld the adverse benefits determination as supported by substantial evidence. This appeal followed.

## II.    Standard of Review

We review the district court's decision de novo, applying the same standards that govern the district court. *See Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014). We therefore review the Commissioner's decision to determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standards. *See id.* Substantial evidence "is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* "[T]he threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

In conducting our review, "[w]e consider whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases, but we will not reweigh the evidence or substitute our judgment for the Commissioner's." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (internal quotation marks omitted). Because we may neither reweigh evidence nor substitute our judgment for the Commissioner's, "[t]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Id.* (internal quotation marks omitted); *see also Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir.

3

2007) (stating that "we may not displace the agency's choice between two fairly conflicting views" (brackets and internal quotation marks omitted)).  Thus, we may overturn the ALJ's findings under the substantial-evidence standard "only where there is a conspicuous absence of credible" evidence to support it or "no contrary medical evidence" to refute a claim of disability.  *Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (internal quotation marks omitted).

### III.    Discussion

Ms. Miller argues that the ALJ erred in evaluating the evidence concerning her headaches, PTSD, and hand arthritis symptoms.

### A.  Legal Framework

We begin with the legal framework.  To be eligible for benefits, the claimant must prove she is disabled within the meaning of the Act.  *See Wall v. Astrue*, 561 F.3d 1048, 1062 (10th Cir. 2009).  The claimant generally bears the burden of proving disability throughout the evaluation.  *See id.*  The ALJ "has a duty to ensure that an adequate record is developed," even in cases where the claimant has counsel. *Id.* at 1062-63.  But "the ALJ may reasonably rely on counsel to identify the issue or issues requiring further development," and "the claimant has the burden" to ensure that the record contains sufficient evidence to support her claim.  *Id.* at 1063 (internal quotation marks omitted).

"[A] physical or mental impairment must be established by objective medical evidence from an acceptable medical source."  20 C.F.R. § 404.1521.  Thus, although the ALJ must consider the claimant's "statements about [her] symptoms . . . and any

4

description [her] medical sources or nonmedical sources may provide about how the symptoms affect [her] activities of daily living and [] ability to work," *id.* § 404.1529(a), a claimant's "statement of symptoms, a diagnosis, or a medical opinion" alone will not establish an impairment, *id.* § 404.1521.

The ALJ must consider "all the medical opinions in the record . . . [and] discuss the weight he assigns to such opinions." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012). In doing so, "the ALJ must consider the factors listed in 20 C.F.R. § 404.1527(c) and give good reasons for the weight he assigns to the opinion." *Vigil v. Colvin*, 805 F.3d 1199, 1202 (10th Cir. 2015).[1] An ALJ may not, without explanation, adopt parts of a medical opinion while rejecting others. *See Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007). When there are differences of opinion among the medical sources, the ALJ must explain the basis for adopting one and rejecting another. *See id.* Although an ALJ must "adequately evaluate and discuss the medical-source evidence," we will find his explanation sufficient if we "can follow [his] reasoning in conducting our review, and can determine that correct legal standards have been applied." *Keyes-Zachary*, 695 F.3d at 1166.

"The ALJ is not required to discuss every piece of evidence," and "we will generally find the ALJ's decision adequate if it discusses the uncontroverted evidence [he] chooses not to rely upon and any significantly probative evidence." *Wall*, 561 F.3d at 1067 (internal quotation marks omitted). Here, the ALJ stated that

---

[1] New agency rules for evaluating medical opinions, effective as of March 27, 2017, do not apply to Ms. Miller's disability claim, which was filed in 2007.

he made his decision after "careful consideration of the entire record," Aplt. App., vol. 6 at 1168, including Ms. Miller's subjective symptom complaints, the objective medical evidence, her treatment history, lay and expert testimony from the final and prior ALJ hearings, and assessments of her functioning offered by more than ten examining or testifying medical sources. "[O]ur general practice . . . is to take a lower tribunal at its word when it declares that it has considered a matter." *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005).

**B. The ALJ's assessment of Ms. Miller's headache symptoms**

Ms. Miller raises several challenges to the ALJ's evaluation of the evidence regarding her headaches and his finding that they "are non-medically determinable and/or non-severe." Aplt. App., vol. 6 at 1169.

Initially, we note that to the extent Ms. Miller challenges the ALJ's finding that her headaches are a non-severe impairment, any error in that finding is harmless because the ALJ found she had other severe impairments and appropriately considered her headache symptoms and their resulting limitations in assessing her RFC. *See Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016); *Smith v. Colvin*, 821 F.3d 1264, 1266-67 (10th Cir. 2016); *see also* 20 C.F.R. § 404.1545(a)(2) (requiring an ALJ to consider the combined impact of all impairments, including non-severe impairments, when assessing a claimant's RFC). We thus construe her arguments as challenging the ALJ's evaluation of the headache-related evidence for purposes of determining her RFC.

6

Ms. Miller argues the evidence does not support the ALJ's finding that there was no "actual objective diagnosis of migraine headaches or headaches of any particular type," Aplt. App., vol. 6 at 1177, and that in making that finding, the ALJ gave insufficient weight to her pre-onset medical records and medical source opinions she characterizes as supporting her headache disability claim.

Before making that finding, the ALJ considered testimony from Ms. Miller and lay witnesses about her headaches, her log of the days she had headaches in 2012, and her reports of headache symptoms to psychological consultive examiner Edwin Christensen, who diagnosed her with dementia due to headache. The ALJ also acknowledged several instances when she was treated for headaches before her alleged onset of disability in 2006: an emergency room visit in 1991 during which she was "given pain medication with good relief," treatment of migraines with medication in 1998, and complaints to medical providers "of headaches associated with neck pain" after a car accident in 2002. *Id.* at 1169.

The ALJ found there was no objective medical evidence supporting a headache diagnosis during the relevant period because Ms. Miller had not been treated for headaches during that time, had not been "prescribed any medications for migraine headaches," and had "never been referred to a neurologist for evaluation of migraine headaches." *Id.* That finding is supported by medical expert Donald Blackman's testimony that although her treatment records predating her onset date showed occasional treatment for headaches when they occurred, she had not received ongoing treatment for headaches, so there was no evidence that she continued to have

7

headaches despite preventative treatment.  The ALJ's finding is also supported by testimony from state agency psychologist John Gill and independent psychological medical expert Craig Swaner that Dr. Christensen's diagnosis of dementia due to headaches was unsupported by the medical record, and neurologist Ronald Deveres's testimony that, while he did not dispute Ms. Miller had headaches, Dr. Christensen's notation about headaches based on her reported history was insufficient to establish a headache diagnosis.  And physical consultative examiner Joseph Nelson concluded after his 2017 examination of Ms. Miller that there was "no evidence of debilitating migraines that would limit her ability to work."  *Id.*, vol. 9 at 2002.

We reject Ms. Miller's argument that the ALJ erred by dismissing Dr. Christensen's dementia-due-to-headaches diagnosis.  The ALJ gave several reasons for doing so, and each is supported by the record.  <u>First</u>, the ALJ rejected the diagnosis based on testimony from Drs. Swaner and Gill that it was not supported by her medical records and was inconsistent with Dr. Christensen's own evaluation, which showed that although Ms. Miller's concentration was "off and on," *id.*, vol. 5 at 877, the results of her memory testing were largely normal.  The ALJ appropriately considered these factors.  *See* 20 C.F.R. § 404.1527(c)(3) ("The more a medical source presents relevant evidence to support a medical opinion . . ., the more weight we will give that medical opinion."); *id.* § 404.1527(c)(4) ("[T]he more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion.").  And despite Ms. Miller's disagreement with the ALJ's determination, it is supported by substantial evidence in the record.  *See Raymond v.*

8

*Astrue*, 621 F.3d 1269, 1272 (10th Cir. 2009) (concluding ALJ could reasonably discount an opinion that was not supported by objective testing); *Pisciotta v. Astrue*, 500 F.3d 1074, 1078 (10th Cir. 2007) ("Medical evidence may be discounted if it is internally inconsistent or inconsistent with other evidence." (internal quotation marks omitted)).  We are not persuaded otherwise by her argument that the ALJ erred by crediting this aspect of Dr. Swaner's opinion while discounting his assessment of her mental health and functional limitations.  The ALJ gave valid reasons for doing so, including that he reviewed limited records and his opinion was based largely on her subjective reports.

Second, the ALJ rejected Dr. Christensen's diagnosis because he "did not perform any psychological testing and appeared to rely heavily on [Ms. Miller's] subjective complaints."  Aplt. App., vol. 6 at 1175.  Contrary to her suggestion that this finding is speculative, it is supported by Dr. Christensen's report, which indicates that he did not review her medical records and that his evaluation was based on a clinical interview, mental status evaluation, and memory testing.  Nothing in his report suggests he conducted any testing that would have confirmed what she told him.  These are legitimate considerations.  *See* 20 C.F.R. § 404.1527(c)(1), (3); *White v. Barnhart*, 287 F.3d 903, 907-08 (10th Cir. 2001).  Substantial evidence supports the ALJ's finding.

Third, the ALJ rejected Dr. Christensen's headache diagnosis because he is a psychologist who is not qualified as an expert in diagnosing underlying physical impairments.  Ms. Miller takes issue with that finding, but the ALJ appropriately

considered Dr. Christensen's area of specialization in determining how much weight to give his opinion. *See* 20 C.F.R. § 404.1527(c)(5); *see also Buxton v. Halter*, 246 F.3d 762, 775 (6th Cir. 2001) (observing that a psychologist "was not qualified to diagnose" "underlying *physical* conditions"). Substantial evidence supports the ALJ's reasons for rejecting Dr. Christensen's diagnosis.

Ms. Miller next argues the ALJ gave insufficient weight to her testimony, other lay testimony about her headaches, and her headache log. The ALJ concluded this evidence was insufficient to establish a headache disability because:

> this log does not include any explanation with regard to the specific symptoms she was experiencing such as whether the pain was localized versus radiating or whether the headaches were accompanied by other symptoms common to migraines such as blurred vision, dizziness, or nausea or otherwise describe the degree of symptom intensity or resulting limitation. Nor did the claimant identity possible triggers or conditions that precipitated the alleged headaches.

Aplt. App., vol. 6 at 1169. The ALJ appropriately considered the level of detail she provided in her testimony and logs. And, contrary to Ms. Miller's assertion, the ALJ did not analyze this evidence "in isolation from the other evidence without determining if it was consistent with, and supported by, the totality of the evidence." Aplt. Opening Br. at 5. After making that finding, the ALJ concluded "the objective medical evidence does not correlate either [her] testimony or the headache log, particularly within the timeframe in question." Aplt. App., vol. 6 at 1169. As discussed above, substantial evidence supports that conclusion.

Ms. Miller also argues that the ALJ did not consider whether her testimony and headache log "were consistent with and supported by" the opinion of Dr. Juan

10

Mejia. Aplt. Opening Br. at 5. After conducting two comprehensive physical examinations of Ms. Miller, including a neuropsychological evaluation, Dr. Mejia diagnosed her with PTSD, chronic pain, and personality disorder. The results of the neurological evaluation were largely normal and revealed no significant neurological deficits. His 2010 report indicates that she told him she had "frequent headaches and migraines" which she attributed to her back injury and stress, Aplt. App., vol. 5 at 973-74, and his 2017 report chronicles her self-reported history of headaches, *see id.*, vol. 9 at 1991-96. But Dr. Mejia did not diagnose Ms. Miller with headaches, and she points to nothing in his report that contradicts the ALJ's findings.

The one piece of headache-related evidence Ms. Miller points to that the ALJ did not mention is physical consultive examiner Richard Ingebretsen's 2007 report. She told him she broke her tailbone in a childhood accident and that she had lingering tailbone, back, hip, and neck pain. She described having headaches that last for several days every two weeks but said she sometimes "go[es] a month without one," and that she treats them with ibuprofen. *Id.*, vol. 5 at 845. Dr. Ingebretsen conducted a physical and neurological exam, observed that Ms. Miller "was not having a headache" at that time, and concluded "[h]er physical examination tends to support her subjective limitations." *Id.* at 847. Contrary to Ms. Miller's suggestion, neither that conclusion nor his description of her reports of headaches constitutes objective medical evidence of a headache diagnosis. Thus, the ALJ did not err by not discussing Dr. Ingebretsen's report in analyzing her headache evidence. *See Wall*, 561 F.3d at 1067.

11

Ms. Miller's final argument regarding the ALJ's assessment of her headache evidence is that he failed in his duty to develop an adequate administrative record by not ordering a consultative neurological examination. An ALJ "has broad latitude" in determining whether to order a consultative examination. *Hawkins v. Chater*, 113 F.3d 1162, 1166 (10th Cir. 1997). A consultative examination may be required if there is a direct conflict in the medical evidence, the medical evidence is inconclusive, or additional tests were required to explain a diagnosis. *See id.* But that was not the case here. As discussed above, the ALJ reasonably relied on the largely normal results of Dr. Mejia's neurological evaluation and testimony from multiple experts that Ms. Miller's headaches were not medically diagnosable and were not as severe or limiting as she claimed. Based on the existing record, the ALJ could reasonably have concluded that he had enough information to make a decision and that developing the record with additional neurological testing was unnecessary. *See Cowan v. Astrue*, 552 F.3d 1182, 1187 (10th Cir. 2008) (concluding that "sufficient information existed for the ALJ to make her disability determination" without ordering a consultative examination concerning claimant's mental impairment); *Diaz v. Sec'y of Health & Hum. Servs.*, 898 F.2d 774, 778 (10th Cir. 1990) (finding no error in ALJ's failure to order consultative examination where existing evidence did not support applicant's disability claim).

In sum, the ALJ considered the relevant evidence regarding the treatment and severity of Ms. Miller's headaches, and he gave sound reasons both for the weight he gave the medical source opinions and for concluding she did not provide objective

medical evidence of a headache disability.  Substantial evidence supports the ALJ's decision.  *See Allman*, 813 F.3d at 1331 (affirming where ALJ reasonably found that despite claimant's reports of headache symptoms, the record did not contain medical evidence establishing the existence of headache pain so severe as to prevent work).

### C. The ALJ's assessment of Ms. Miller's PTSD symptoms

For similar reasons, we also reject Ms. Miller's challenges to the ALJ's assessment of her PTSD symptoms.

Ms. Miller first challenges the ALJ's assessment of the opinion of Dr. Jonathan Ririe, who diagnosed her with PTSD, major depressive disorder, and dependent personality disorder after a psychological evaluation in 2000.  The ALJ gave Dr. Ririe's opinion "very little weight" because it predated the onset of her alleged disability by six years, so was "not within the relevant period."  Aplt. App., vol. 6 at 1174.  Ms. Miller acknowledges that "the probative value of medical evidence outside of the applicable period of disability at issue is attenuated over time."  Aplt. Opening Br. at 29.  But she argues that the ALJ erred by discrediting Dr. Ririe's opinion because it could "support the existence and severity of [her] disability during the relevant time period," *id.*, and the ALJ's assessment suggests he did not recognize that PTSD is an unstable condition that can manifest long after the traumatic event that caused it, and that it waxes and wanes after manifestation.

A doctor's observations are "relevant to the claimant's medical history and should be considered by the ALJ" even if they pre-date her alleged disability period. *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004).  Contrary to Ms. Miller's

13

suggestion, however, nothing in the ALJ's decision suggests he rejected Dr. Ririe's PTSD diagnosis or ignored that her PTSD was a longstanding and inconsistent problem. Indeed, the ALJ indicated that he "considered and weighed all of the opinion evidence of record," including Dr. Ririe's opinion, Aplt. App., vol. 6 at 1092, and he found the "objective medical evidence establishe[d]" that she suffered from PTSD stemming from multiple traumas throughout her life, *id.* at 1168; *see also id.* at 1172-73, 1176 (discussing traumatic events). The ALJ also found her PTSD was a severe impairment. *See id.* at 1168. The question, then, was the extent to which her PTSD affected her workplace limitations, and it was in the context of discussing her functional limitations that the ALJ said he gave Dr. Ririe's opinion little weight. That is entirely appropriate given that there is nothing in Dr. Ririe's report that is relevant to that analysis—he diagnosed Ms. Miller's mental health issues and concluded she would benefit from counseling and medication, but he did not assess her functional workplace limitations.

Ms. Miller also challenges the ALJ's assessment of Dr. Swaner's opinion that her mental health issues, including PTSD, limited her functioning so significantly that she is disabled and entitled to benefits. In 2009, after reviewing Dr. Ririe's evaluation and Dr. Christensen's report, Dr. Swaner concluded Ms. Miller had mild to marked functional limitations, and he completed a checkbox form opining that she could not perform many mental work activities for ten percent of a normal workday. The ALJ gave Dr. Swaner's opinion only partial weight for two reasons.

First, the ALJ noted that Dr. Swaner's conclusions regarding Ms. Miller's limitations were reflected on a checkbox form that used "a completely different rating scheme" than the agency's, and that "[s]imple checkmarks are poor indications of a medical opinion" because "they offer no explanation or basis for their significance." *Id.* at 1175. This was a legitimate consideration. *See* 20 C.F.R. § 404.1527(c)(3) (providing that ALJ will consider the explanation provided to support an opinion); *Frey v. Bowen*, 816 F.2d 508, 515 (10th Cir. 1987) (upholding ALJ's determination that checked boxes on an evaluation form "unaccompanied by thorough written reports or persuasive testimony" are not reliable evidence). Ms. Miller complains that the ALJ did not discount two other doctors' opinions on the ground that they completed checkbox forms, but the forms they completed used the agency's rating system and those doctors provided narrative explanations of their opinions regarding her limitations.

Second, the ALJ discredited Dr. Swaner's opinion because he did not review the complete record and his opinion was based largely on Ms. Miller's subjective reports. Substantial evidence supports these findings. Dr. Swaner testified that he only reviewed two reports relating to Ms. Miller's mental functioning, and his description of her symptoms and limitations were based on her statements to the doctors who prepared those reports. This, too, was a reasonable consideration. *See* 20 C.F.R. § 404.1527(c)(3) (providing that ALJ may give less weight to opinions of medical sources with no examining or treatment relationship with claimant); *id.* § 404.1527(c)(4) (providing that ALJ will consider an opinion in light of the record

15

as a whole).  Ms. Miller's insistence that other records were "[a]vailable" to Dr. Swaner, Aplt. Opening Br. at 31, is unavailing given his testimony that only two of the reports made available to him related to her mental health.  And neither Ms. Miller's speculation that nothing in her records postdating Dr. Swaner's report would have changed his opinion nor the fact that the ALJ found portions of those records unpersuasive undermines the validity of the ALJ's ruling.  He applied the correct legal standard, and the record supports his findings.

Ms. Miller's challenges to the ALJ's assessment of Dr. Mejia's opinion also fail.  He opined that although she could function adequately during "periods of relative emotional stability," her PTSD condition "is likely to manifest" at times of stress, "preventing her from meeting the demands of competitive employment." Aplt. App., vol. 5 at 983; *see also id.* at 967 (opining that Ms. Miller's PTSD and other mental health issues prevent her "from being able to maintain competitive employment").  The ALJ acknowledged Dr. Mejia's examining relationship with Ms. Miller and that he provided a detailed account of her history, but the ALJ gave Dr. Mejia's opinion "little weight" because:  (1) there was "very little objective support" for his opinion; (2) he relied "heavily on subjective information" from Ms. Miller and her mother; (3) his conclusion that her longstanding struggle with PTSD rendered her unable to work was inconsistent with her "significant work activity between 2001 and 2006" and her report that her last job ended for reasons unrelated to her mental health; (4) there were inconsistencies in his report "regarding the length of the examination"; (5) Dr. Mejia's objective testing did "not corroborate

her reported history and deficits"; and (6) he "made several statements regarding vocational matters that were purely speculative, outside his area of expertise, and . . . [his] opinion that [Ms. Miller] is unable to work" is a decision "reserved for the Commissioner." *Id.*, vol. 6 at 1176.

Ms. Miller acknowledges that the ALJ's sixth reason for rejecting portions of Dr. Mejia's opinion was valid. *See* 20 C.F.R. § 404.1527(d)(1), (3) (providing that opinions "on issues reserved to the Commissioner," including whether the claimant is disabled, "are not medical opinions" and are given no "special significance"); *Castellano v. Sec'y of Health & Hum. Servs.*, 26 F.3d 1027, 1029 (10th Cir. 1994) (holding that treating physician's opinion that the claimant is disabled is "not binding"). But she challenges the supportability of the ALJ's other five reasons.

As for the ALJ's first and fifth reasons—that Dr. Mejia's opinion was not supported by objective evidence, including his own testing—she argues that the ALJ's findings are "wholly incorrect," Aplt. Opening Br. at 36, because Dr. Mejia "administered psychometric testing and observed her through 18 clinical presentations," and he "thoroughly explained how [the test] results were consistent with his opinion within the context of the evidence," *id.* at 9. She acknowledges, however, that the ALJ's observation that Dr. Mejia's testing "generated . . . normal findings in some areas of functionality" was a "cogent criticism" of his report. *Id.* at 36. The ALJ specifically mentioned Dr. Mejia's treating relationship with Ms. Miller, their numerous consultations, and Dr. Mejia's explanations of why he thought his conclusions were consistent with his testing. But based on a review of

17

the record as a whole, the ALJ found Dr. Mejia's explanations "not particularly persuasive," Aplt. App., vol. 6 at 1178, in light of his and other testing, including Dr. Barnett's 2012 evaluation, which produced largely normal results. These were legitimate considerations. *See Allman*, 813 F.3d at 1332 (holding that ALJ could reasonably discount an opinion that was not supported by objective testing); *Castellano*, 26 F.3d at 1029 (upholding ALJ's rejection of treating physician's opinion that claimant was disabled where his conclusions were not supported by the results of his examination). And although a different adjudicator might have evaluated Dr. Mejia's opinion differently, that is not a basis for displacing the Commissioner's decision. *See Oldham*, 509 F.3d at 1257-58 (upholding weight ALJ gave treating physician's opinion even though evidence "may also have supported contrary findings").

The ALJ's second reason for rejecting Dr. Mejia's opinion—that he relied heavily on Ms. Miller's subjective complaints—is also supported by substantial evidence. The practice of psychology is necessarily dependent, at least in part, on a patient's subjective statements, and "a psychological opinion may rest either on observed signs and symptoms or on psychological tests." *Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004). Ms. Miller again points out that she saw Dr. Mejia several times and that he performed testing on her, and she claims the ALJ "speculated" that Dr. Mejia relied on "subjective information." Aplt. Opening Br. at 37. That finding, however, was not speculative. The results of his testing were largely normal, and his conclusion that she was unable to work was not based on his

18

clinical observations of her—it was based primarily on her reports of her symptoms to him and to other medical sources, as reflected in the limited set of records he reviewed, most of which predated the start of the relevant period.

Substantial evidence also supports the ALJ's finding that Dr. Mejia's opinion that her PTSD left her unable to work was inconsistent with other record evidence. Dr. Mejia determined that Ms. Miller's PTSD was "not with delayed onset" because "the onset of her symptoms reportedly occurred at the time of her major traumatic event"—her marriage from 1980 to 1998 to an abusive husband.  Aplt. App., vol. 5 at 981.  The record shows that she worked consistently from 2001 to 2006, and she told Dr. Mejia and other medical sources, including Dr. Barnett, she left that job and previous jobs for reasons unrelated to her mental health, including headaches, back pain, difficulty finding childcare, and transportation issues.  The record also shows that Ms. Miller was able to engage in most of her usual daily activities.  Based on this evidence, the ALJ reasonably found that if she "is now unable to work due to her past troubled life, . . . she should also have been unable to work from 2001 through 2006 due to the same events." *Id.*, vol. 6 at 1176.

Ms. Miller claims the ALJ's fourth reason for discrediting Dr. Mejia's opinion—that there were inconsistencies in his report about the length of her examination process—is an impermissible criticism of Dr. Mejia's "approach" to evaluating her psychological impairments.  Aplt. Opening Br. at 38.  But that is not an accurate characterization of the ALJ's finding.  The ALJ observed that at one point in his report, Dr. Mejia said the unusually long consultative examination

process was "due to various factors," primarily his "having a busy schedule of work commitments." Aplt. App., vol. 5 at 968. He said her frequent cancellations because she was "feeling physically sick" or "emotionally distressed" out of "concern about her mother's health," *id.*, were another factor. *Id.* Later in his report, he said "her absences prolonged the course of the evaluation," without mentioning other factors that contributed to the delay. *Id.* at 983. Nothing in the ALJ's finding that these two statements were inconsistent suggests he was criticizing Dr. Mejia's evaluative approach. Internal inconsistencies in a medical source opinion are a valid consideration, *see Pisciotta*, 500 F.3d at 1078, and while another factfinder might disagree about whether these statements are inconsistent, the possibility of drawing different conclusions from the same evidence "does not prevent [the ALJ's] findings from being supported by substantial evidence." *Lax*, 489 F.3d at 1084 (internal quotation marks omitted).

Ms. Miller's final PTSD-related argument is that although the ALJ acknowledged that she suffers from PTSD symptoms, he failed to consider her "uncontradicted symptoms" in assessing her RFC. Aplt. Opening Br. at 38. To the contrary, the ALJ discussed the evidence regarding her PTSD symptoms in detail in his explanation for the RFC assessment, and he concluded that although her PTSD is a severe impairment, she can still work with certain limitations. The ALJ's rejection of her argument about the severity of her symptoms and the extent of her limitations does not mean he did not consider her PTSD symptoms in assessing her RFC. Substantial evidence supports the ALJ's assessment of the evidence regarding her

PTSD symptoms and resultant functional limitations.  Her arguments to the contrary boil down to a request that we reweigh the evidence, which we cannot do.  *See White*, 287 F.3d at 908.

### D. The ALJ's assessment of Ms. Miller's hand arthritis symptoms

Ms. Miller challenges the agency's assessment of her alleged hand arthritis on three grounds:  (1) the ALJ erred in concluding she had no medically determinable impairment related to her hands; (2) the Appeals Council erred in concluding her additional evidence would not have changed the outcome; and (3) the ALJ failed in his duty to develop the record by not ordering a consultative rheumatology examination to evaluate her allegation of bilateral hand arthritis.

The ALJ found that despite Ms. Miller's complaints of pain in her hands, her alleged hand arthritis was not medically determinable because "there are no objective clinical findings . . . indicative of osteoarthritis or any other impairment of the hands."  Aplt. App., vol. 6 at 1169.  The IJ also found her alleged hand problems did not significantly limit her functioning.  The evidence Ms. Miller presented to the ALJ supports those findings.  It showed that although she made sporadic reports of hand pain, she did not seek treatment for hand problems during the relevant period or complain of hand problems to providers when she sought treatment for other conditions.  Two physical consultative examinations—Dr. Ingebretsen's in 2007 and Dr. Nelson's in 2017—showed no swelling in her hands or tenderness to the touch, and concluded she demonstrated full hand strength and grip.  The evidence also showed that despite her reports of hand pain, she was able to engage in most of her

usual activities. Substantial evidence supports the ALJ's decision. *See Wilson v. Astrue*, 602 F.3d 1136, 1146 (10th Cir. 2010) (holding that ALJ reasonably considered claimant's course of treatment and documented activities in finding she was not as restricted as she claimed); *see also* 20 C.F.R. § 404.1529(c)(3)(i), (iv)-(vi), (4) (providing that in evaluating a claimant's reports of pain, ALJ will consider her activities, the treatment received and its effectiveness, and the consistency of her statements with other evidence).

After the ALJ made his decision, Ms. Miller saw chiropractor Jeffrey Clayton, who opined in an "arthritis medical source statement" that she had "moderate to sever[e]" osteoarthritis in her hands. Aplt. App., vol. 6 at 1100, 1103. Dr. Clayton's x-ray report stated that she "has significant degenerative joint disease" and "mild to severe" bilateral arthritis. *Id.* at 1105. His statement indicates that he saw Ms. Miller once and was "unsure" what functional limitations she might have because he did not perform any testing. *Id.* at 1101-03.

Ms. Miller submitted his statement and x-ray report to the Appeals Council in support of her petition for review. The Appeals Council concluded her new evidence did not provide a basis to review the ALJ's decision because she submitted no information showing she had been treated for this issue and how she responded to any treatment, and "without ongoing records, it is unclear how [her] functioning will be impacted." *Id.* at 1091-92. It also concluded review of the ALJ's decision based on this evidence was not warranted because the evidence "does not relate to the period" covered by that decision. *Id.* at 1093.

22

Ms. Miller takes issue with what she describes as the Appeals Council's "offhand" rejection of Dr. Clayton's opinion on the ground that he is not an approved medical source. Aplt. Opening Br. at 41.[2] But the Appeals Council did not reject his opinion—it simply concluded his opinion did not warrant review of the ALJ's decision. *See* 20 C.F.R. § 416.1481 ("The Appeals Council may deny a party's request for review or it may decide to review a case and make a decision."); *see also Vallejo v. Berryhill*, 849 F.3d 951, 956 (10th Cir. 2017) (holding that Appeals Council does not make a decision on an application when it denies review, so is "not required to follow the same rules for considering opinion evidence as the ALJ"). Moreover, that Dr. Clayton is not an acceptable medical source was not the basis for the Appeals Council's determination that his report did not warrant review, and Ms. Miller does not explain why she thinks the reasons the Appeals Council gave are wrong. Nor has she shown that a new substantial-evidence assessment of the entire agency record, including Dr. Clayton's opinion, would change the ALJ's decision. *See Vallejo*, 849 F.3d at 956 (recognizing that when a claimant submits new evidence to the Appeals Council and the Appeals Council accepts it, that evidence becomes part of the record to be considered by a district court in performing substantial evidence review).

---

[2] Only acceptable medical sources can provide evidence to establish a medically determinable impairment, 20 C.F.R. § 404.1521, and chiropractors are not an acceptable medical source, *see id.* § 404.1502(a) (defining acceptable medical source).

Ms. Miller's final argument—that the ALJ should have ordered a consultative rheumatology examination to further evaluate her complaints of hand pain—also fails. She did not ask the ALJ to do so, and it was her burden to ensure that the record contained sufficient evidence to support her claim of disability due to arthritic hands. *See Wall*, 561 F.3d at 1063. Moreover, the agency had already ordered two comprehensive physical consultative examinations of Ms. Miller, which did not support that claim. The ALJ could reasonably have concluded that he had enough information to make a decision and that further development of the record was unnecessary. *See Cowan*, 552 F.3d at 1187; *see also Rutledge v. Apfel*, 230 F.3d 1172, 1175 (10th Cir. 2000) (rejecting argument that the ALJ should have further developed the record where his conclusions were consistent with the objective medical evidence).

## IV.    Conclusion

We affirm the judgment of the district court.

Entered for the Court

Nancy L. Moritz
Circuit Judge